John Anthony SAENZ, Appellant,

v.

The STATE of Texas.

No. PD–61–04.

Court of Criminal Appeals of Texas.

June 29, 2005.

Roderick B. Glass, San Antonio, for Appellant.

Daniel Thornberry, Asst. District Attorney, San Antonio, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, PRICE, WOMACK, JOHNSON, KEASLER, and COCHRAN, JJ., joined.

Appellant had agreed to sell an amount of cocaine for a supplier but ended up consuming most of it in a three-day drug binge. When appellant's supplier found out that appellant had consumed most of the cocaine, he went to appellant's house with two companions. Anticipating trouble, appellant had two armed cohorts laying in wait. Appellant allowed the supplier and his companions into the home. The supplier demanded either the money for the cocaine or the cocaine. Appellant gave him what was left of the cocaine. Believing that the supplier had given a signal to his companion, appellant then alerted his two cohorts, and they shot and killed all three victims—appellant shot the supplier, and appellant's cohorts shot the supplier's companions.

Appellant was charged with capital murder in a three count indictment. Each count alleged the murder of a different victim, and each count alleged the murder of the two other victims as aggravating circumstances. The jury convicted appellant of three counts of capital murder. Under each count, the jury found that appellant would not be a future danger and imposed life imprisonment for each count.

On direct appeal, appellant complained that the three convictions of capital murder violated his right against the imposition of multiple punishments under the Fifth Amendment's double jeopardy clause. The court of appeals agreed and acquitted appellant of the two capital murders based on party liability (the capital murder convictions of the supplier's companions) but upheld appellant's conviction of the capital murder of the supplier, whom appellant himself had shot to death. *Saenz v. State*, 131 S.W.3d 43, 53 (Tex. App.-San Antonio 2003). We granted the State's petition for discretionary review on the following single question: "Did the Court of Appeals err in holding that the appellant had been subjected to multiple punishments for the same offense in viola-

tion of the Double Jeopardy clause, when separate judgments for the offense of capital murder were entered for each victim of a multiple murder committed in the same criminal transaction?" We hold that the court of appeals did not err.

### DISCUSSION

■ The Double Jeopardy Clause protects against multiple punishments for the same offense. U.S. CONST. amend. V; *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled in part on other grounds by, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865(1989). The Fifth Amendment's multiple punishments prohibition is violated when a defendant "is convicted of more offenses than the legislature intended." *Ex Parte Ervin,* 991 S.W.2d 804, 807 (Tex.Crim.App.1999) (*citing Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740(1985)).

■ The Legislature is endowed with the power to establish and define criminal offenses. *Ex parte Hawkins,* 6 S.W.3d 554, 556 (Tex.Crim.App.1999). The Double Jeopardy Clause puts little, if any, limitation on this power. *Id.* In determining whether a particular course of conduct involves one or more distinct offenses under a single statute, we must ascertain the "allowable unit of prosecution" under the statute. *See Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *Hawkins,* 6 S.W.3d at 556. Thus, our task here is to decide whether the Legislature intended that three "units of prosecution" be charged under the capital murder statute. *See Hawkins,* 6 S.W.3d at 556–57.

■ The relevant factors to be considered in determining the legislative intent concerning the allowable unit of prosecution are statutory construction, *see id.* at 559, and whether the statute's legislative history expresses an intent to treat the crimes as the same offense rather than separate and severally punishable offenses. *See Ervin,* 991 S.W.2d at 814.

*Statutory Construction*

■ A plain reading of Penal Code § 19.03(a)(7)(A) shows that, at a minimum, one intentional or knowing murder is required under Penal Code § 19.02(b)(1), and that one additional murder be committed during the same criminal transaction. TEX. PEN.CODE ANN. § 19.03(a)(7)(A). Thus, in order to violate Section 19.03(a)(7)(A) and be subject to capital punishment, a defendant must kill "more than one person." *Id.* Unlike other violent offenses, for which the allowable unit of prosecution is each individual victim, *see Phillips v. State,* 787 S.W.2d 391, 394–95 (Tex.Crim.App.1990)(assault), *ex Parte Rathmell,* 717 S.W.2d 33, 36 (Tex.Crim.App.1986)(voluntary manslaughter), the capital murder statute under subsection (a)(7)(A) requires, at minimum, two victims. Thus, an accused may not be charged under the capital murder statute absent "more than one" homicide.

■ We have said, "[a]s a predicate to charging capital murder, the Penal Code requires that a defendant commit murder as defined under Section 19.02(b)(1)." *Graham v. State,* 19 S.W.3d 851, 853 (Tex. Crim.App.2000). "The predicate murder is then aggravated to capital murder where any one of eight additional circumstances are [sic] present." *See id.* With the exception of the circumstance listed in Section 19.03(a)(7)(B) (multiple murders committed during different transactions but as part of the same course of conduct), which was added to the Code along with Section 19.03(a)(7)(A), all other cases in which capital murder may be charged allow for the charging of a single capital murder per circumstance, as they all may apply in

situations where only one victim has been killed.[1] The aggravating circumstance for a capital murder prosecution under Section 19.03(a)(7)(A), however, is the murder of "more than one person during the same criminal transaction." TEX. PEN.CODE ANN. § 19.03(a)(7)(A). Thus, in order to invoke Section 19.03(a)(7)(A) at all, two murders must have been committed. The commission of at least one murder, then, which is in addition to the predicate murder, is the aggravating circumstance required by Section 19.03(a)(7)(A). Just as the clear allowable unit of prosecution under Section 19.03(a)(8) is the murder of one individual under six years of age, the allowable unit of prosecution for Section 19.03(a)(7)(A) is the commission of any additional murders. Thus, we conclude the statute reflects that the killing of at least two persons allows the State to charge a single count of capital murder under Section 19.03(a)(7)(A).

*Legislative History*

The present version of Section 19.07(a)(7)(A) is the result of Texas House Bill 8, 69th Leg., R.S. (1985) [hereinafter H.B. 8]. H.B. 8 was the legislative response to the State's inability to seek the death penalty as punishment for the concomitant murders of six Dallas nightclub patrons by Abdelkrim Belachheb.[2] *See* Hearing on Tex. H.B. 8 before the House Crim. Jur. Comm., 69th Leg., R.S. (Feb. 11, 1985).[3] The "glaring loophole" in the Penal Code sought to be closed by H.B. 8, was the inability of the State to seek the death penalty against Belachheb and other mass murderers. *See id.*[4]

The legislative record does not suggest that, in addition to creating a means for the State to seek the death penalty against mass murderers, H.B. 8's authors intended to create a means for the State to seek *multiple* death penalties against mass murderers. Rather, much of the legislative commentary on the bill focused on the Legislature's goal of making it possible for the State to *execute* mass murderers.[5]

In their discussion of the bill's purpose, its authors and supporters also shed light

1. *See* TEX. PEN.CODE §§ 19.03(a)(1–6, 8) (defining eight other aggravating circumstances that would otherwise constitute intentional or knowing murder under Section 19.02(b)(1), but may be charged as capital murder; i.e., murder of an on-duty peace officer or firefighter, murder committed in the course of the commission of certain other offenses, murder for hire, murder during escape from prison, murder by a prisoner of a prison employee or as part of the activities of a prison gang, murder of a prisoner by certain other prisoners, and murder of a child under six years of age).

2. *See Belachheb v. State*, 699 S.W.2d 709 (Tex. App.-Fort Worth 1985)(pet.ref'd).

3. Testifying before the House Committee on Criminal Jurisprudence in support of H.B. 8, the *Belachheb* trial prosecutor explained that the citizens of Dallas were dissatisfied with Belachheb's life sentences because they had "wanted to see the price paid" for Belachheb's crimes. Hearing on Tex. H.B. 8 before

the House Crim. Jur. Comm., 69th Leg., R.S. (Feb. 11, 1985)(testimony of Dallas County Assistant District Attorney Rider Scott).

4. (bill introduction by Committee Chair Rep. Terral Smith).

5. Senator Parmer, the bill's co-sponsor, told his colleagues on the Senate Criminal Justice Committee that "it makes no sense at all to have capital punishment for anybody unless you're going to apply that supreme penalty for the person who takes multiple lives." *See* Hearing on Tex. H.B. 8 before the Senate Comm. on Crim. Justice, 69th Leg. (March 26, 1985). Also, when H.B. 8's co-author presented his bill to the House Criminal Jurisprudence Committee, he emphasized that the goal of the legislation was to insure that "if a person murders more than one person, they at least ought to be eligible for the death penalty." *See* Hearing on H.B. 8 before the House Crim. Jur. Comm., 69th Leg., R.S. (Feb. 11, 1985)(speech of Rep. Tony Polumbo); *see also,* Debate on H.B. 8 on the Floor

on their view of the allowable unit of prosecution under the statutory change to be enacted by H.B. 8. Throughout House and Senate floor debates and committee hearings, the rhetoric of H.B. 8's co-authors and supporters belies an understanding that the statute would allow for more than *one* capital murder charge per criminal transaction, regardless of the number of victims killed. For example, during a Senate floor debate, an unidentified Senator characterized the bill as an "attempt to punish *the very serious offense of multiple killings." See* Senate Floor Debate on H.B. 8, April 1, 1985.[6] Clearly then, H.B. 8's supporters understood the statute to allow for a single capital murder prosecution when the allowable unit of prosecution of "more than one" murder was met.

### HOLDING

The most reasonable interpretation of the statute and its legislative intent is that, under the circumstances presented here, the statute allows only a single capital murder conviction. Accordingly, we hold that the Double Jeopardy Clause of the Fifth Amendment was violated when the State charged appellant with three separate counts of capital murder under Section 19.03(a)(7)(A) because the charges rely on the same three murders for each

charge. We affirm the judgment of the court of appeals.

HERVEY, J., did not participate.

---

of the House of Representatives, 69th Leg., R.S. (March 11, 1985) ("All we simply do with House Bill 8 is say that any person that's committed of [sic] *a multiple murder* such as mass murders ... should at least be eligible for the death penalty.") (speech of Rep. Tony Polumbo).

6. Similarly, testifying before the House Criminal Jurisprudence Committee, George Lambright, a Harris County Assistant District Attorney, spoke of a case in Houston in which four members of a family were murdered during the same incident. According to Lambright, *"that murder* does not fit within one of the enumerated sections within our current capital murder statute that would elevate *that offense* to capital murder." Hearing on Tex. H.B. 8 before the House Crim. Jur. Comm., 69th Leg., R.S. (Feb. 11, 1985) (testimony of Harris County Assistant District Attorney George Lambright).