# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 24, 2010

Lyle W. Cayce
Clerk

No. 07-70009

MIGUEL A. PAREDES,

> Petitioner–Appellant,

v.

RICK THALER, Director, Texas Department of Criminal Justice,
Correctional Institutions Division,

> Respondent–Appellee.

---

Appeal from the United States District Court
for the Western District of Texas

---

Before SMITH, WIENER, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Petitioner Miguel Paredes, convicted of capital murder in Texas and sentenced to death, appeals the federal district court's denial of his petition for writ of habeas corpus. We consider whether Paredes is entitled to relief based on his contentions that (1) the state trial court violated Paredes's constitutional rights by failing to require a unanimous verdict as to which two or more of three decedents Paredes murdered; and (2) he was denied effective assistance of counsel because at trial, his attorney failed to object to the jury instructions in this regard. We affirm.

No. 07-70009

**I**

We have previously considered other grounds on which Paredes seeks habeas relief in *Paredes v. Quarterman* (*Paredes I*).[1]  In our earlier opinion, we described the events leading to Paredes's conviction and death sentence.  We recount in this opinion only the facts essential to the disposition of the issues presently before us.

Paredes, John Saenz, and Greg Alvarado, who were all members of the Hermanos Pistoleros Latinos gang, anticipated a confrontation regarding an illegal drug transaction and allegedly armed themselves, lay in wait, then shot and killed rival gang members Adrian Torres, Nelly Bravo, and Shawn Cain inside Saenz's home.  The victims were slain within seconds of one another.  Paredes was charged with murdering more than one person during the same criminal transaction under the Texas capital murder statute.[2]  The State of Texas alleged alternatively that Paredes should be held responsible for the deaths of more than one of the three decedents under Texas's law of parties, which permits a defendant to be held criminally responsible for an offense committed by another if "with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense."[3]

---

[1] 574 F.3d 281 (5th Cir. 2009).

[2] *See* TEX. PENAL CODE § 19.03(a)(7)(A) ("A person commits [capital murder] if he commits murder as defined under Section 19.02(b)(1) and . . . the person murders more than one person . . . during the same criminal transaction.").

[3] TEX. PENAL CODE § 7.02(a)(2); *see also Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992) ("proof beyond a reasonable doubt that appellant actually fired the fatal shot is not necessary for a capital murder conviction where the jury is charged on the law of parties").

No. 07-70009

At trial, a witness testified that Paredes admitted to shooting Bravo, and other witnesses testified that Paredes remained silent when, in Paredes's presence, John Saenz recounted that Paredes had shot both Bravo and Cain. One witness, Eric Saenz, the brother of John Saenz, testified that after John Saenz, in Paredes's presence, had described in some detail how he, John Saenz, shot Torres, how Paredes shot Bravo in the head, and how Paredes then shot Cain, Paredes stated to Eric Saenz that Eric "should have been there, that [Eric] would have had some fun." Medical evidence was consistent with testimony that Paredes was the shooter in the deaths of Bravo and Cain but not Torres. There was direct evidence that Paredes was in John Saenz's home at the time of the killings and assisted in cleaning blood off the floor and walls of the home and in disposing of the bodies afterwards. There was also strong circumstantial evidence that Paredes was present during the killing of each of the three decedents, and that at a minimum, he aided or attempted to aid Saenz in carrying out the plan to kill these individuals.

In a general charge, the trial judge instructed the jury that it could convict Paredes of capital murder if it found that he killed (1) Torres and either Bravo or Cain; or (2) Bravo and either Torres or Cain; or (3) Cain and either Torres or Bravo. The jury was also permitted to find that Paredes had committed capital murder under the law of parties. The jury was not required to specify which of the alternative grounds it found to be true, and Paredes's lawyer did not object to the instructions. The jury returned a general verdict finding "Paredes guilty of Capital Murder as charged in the indictment," and Paredes was subsequently sentenced to death at the conclusion of the penalty phase of his trial.

No. 07-70009

Paredes appealed his conviction and sentence, and the Texas Court of Criminal Appeals affirmed.[4]  He then filed a habeas application in state court but was denied relief.  In its unpublished opinion denying habeas relief, the Texas Court of Criminal Appeals did not discuss Paredes's contentions regarding jury unanimity, but the court did adopt the findings and conclusion of the state trial court with regard to the habeas petition.[5]  The state trial court's conclusions as to the jury charge issue were brief, stating only that it "did not violate the holding of *Schad*," referring to the Supreme Court's decision in *Schad v. Arizona.*[6]  In *Schad*, four members of the Court in a plurality opinion,[7] and one Justice in a concurring opinion,[8] held that a conviction based on an instruction that did not require jury unanimity as to whether the murder was premeditated or alternatively was a felony murder did not violate the petitioner's right to due process.

Paredes filed the instant federal habeas petition and requested an evidentiary hearing.  The district court denied habeas relief and the request for a hearing, but granted a Certificate of Appealability (COA) on the issue of whether trial counsel rendered ineffective assistance by failing to raise Confrontation Clause objections to the testimony of two trial witnesses.

---

[4] *Paredes v. State*, 129 S.W.3d 530 (Tex. Crim. App. 2004).

[5] *Ex parte Paredes*, No. WR-61,939-01, (Tex. Crim. App. August 31, 2005), *available at* http://www.cca.courts.state.tx.us/opinions/HTMLOpinionInfo.asp?OpinionID=13182.

[6] 501 U.S. 624 (1991).

[7] *Id.* at 630.

[8] *Id.* at 649 (SCALIA, J., concurring).

4

No. 07-70009

Paredes appealed and requested a COA on six additional issues. We affirmed the denial of habeas relief on the Confrontation Clause issue and denied COAs on four issues.[9] We granted a COA on the two related questions that we now address: (1) whether the jury instructions violated Paredes's constitutional rights by not requiring the jury to agree unanimously on which two of the victims he killed; and (2) whether Paredes's attorney was constitutionally ineffective for failing to object to those instructions.[10]

## II

We review Paredes's habeas petition under the "'highly deferential standard for evaluating state-court rulings'"[11] set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA).[12] The question before us is not whether the state trial court should have instructed the jury as it did but instead whether the determination of the Texas Court of Criminal Appeals that there was no violation of Paredes's constitutional rights "was 'an unreasonable application of . . . clearly established federal law'"[13] "'as determined by the Supreme Court of the United States.'"[14] The Supreme Court has repeatedly admonished that "'an *unreasonable* application of federal law is different from

---

[9] *Paredes I*, 574 F.3d at 286-94.

[10] *Id.* at 292-93.

[11] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

[12] 28 U.S.C. § 2254(d).

[13] *Renico*, 130 S. Ct. at 1862 (quoting 28 U.S.C. § 2254(d)(1)).

[14] *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2259 (2010) (quoting 28 U.S.C. § 2254(d)(1)).

an *incorrect* application of federal law.'"[15]  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."[16]  Instead, the application must be "'objectively unreasonable.'"[17]  This standard of review "creates a 'substantially higher threshold' for obtaining relief than *de novo* review."[18]

But even if a state court's determination was an unreasonable application of clearly established federal law, that is not the end of the inquiry.  Generally, on collateral review, "petitioners . . . are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"[19]  An error is prejudicial if it "had substantial and injurious effect or influence in determining the jury's verdict."[20]  The Supreme Court has recently confirmed that jury charge error in a case in which a jury rendering a general verdict had been instructed on alternative theories of guilt and may have relied on an invalid theory is not "structural" error and is subject to harmless-error analysis "so long as the error at issue does not categorically 'vitiat[e] *all* the jury's findings.'"[21]

---

[15] *Renico*, 130 S. Ct. at 1862 (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

[16] *Williams*, 529 U.S. at 411.

[17] *Renico*, 130 S. Ct. at 1862 (quoting *Williams*, 529 U.S. at 409).

[18] *Id.* (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

[19] *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

[20] *Id.* (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

[21] *Hedgpeth v. Pulido*, 129 S. Ct. 530, 532 (2008) (alterations in original) (quoting *Neder v. United States*, 527 U.S. 1, 11 (1999)).

No. 07-70009

## III

To determine whether the Texas court's determinations relating to the jury instruction at issue in the case before us constituted an unreasonable application of clearly established federal law as determined by the Supreme Court, we must attempt to ascertain what the Supreme Court has held regarding the requirement of unanimity in jury instructions in criminal cases. The most recent guidance is found in the four-Justice plurality opinion in *Schad v. Arizona*[22] and Justice Scalia's concurring opinion in that case.[23]  There, the plurality and Justice Scalia concluded that a first-degree murder conviction based on "jury instructions that did not require agreement on whether the defendant was guilty of premeditated murder or felony murder"[24] was not unconstitutional.  But in arriving at that decision, the Court did not, as we shall discuss below, set forth an analytical framework that can be applied to determine readily whether process has been due when facts such as those in the instant case are presented.

### A

In *Schad*, the Arizona Supreme Court had "authoritatively determined that the State has chosen not to treat premeditation and the commission of a felony as independent elements of the crime," and the question was whether

---

[22] 501 U.S. 624, 630-45 (1991).

[23] *Id.* at 648-52 (SCALIA, J., concurring).

[24] *Id.* at 627.

7

No. 07-70009

Arizona's choice was unconstitutional.[25]  In the present case, it is not clear that the Texas Court of Criminal Appeals has authoritatively determined what elements the Texas legislature has prescribed for the crime of murdering more than one person during the same criminal transaction.[26]

The State argues that the single offense of murdering more than one person during the same criminal transaction may be proven by alternative means, such as showing that the defendant killed A and either B or C, B and either A or C, or C and either A or B, and that the jury does not have to agree as to which two of the victims the defendant murdered.  The State argues that the murder of the same decedent does not have to be the predicate for each alternative means of committing the crime of multiple murder when alternative means of committing multiple murder under this statute are alleged.  The State acknowledges, however, that there is no case law in Texas that addresses this precise question.

The decision of the Texas Court of Criminal Appeals that comes closest to answering how the Texas statute should be construed arose out of the conviction of John Saenz,[27] one of Paredes's cohorts in the killings of Torres, Bravo, and Cain, for Saenz's participation in the same criminal transaction leading to Paredes's conviction.  The Court of Criminal Appeals' opinion in *Saenz* reflects that "[e]ach count alleged the murder of a different victim, and each count

---

[25] *Id.* at 636-37.

[26] *See* TEX. PENAL CODE § 19.03(a)(7)(A).

[27] *See Saenz v. State*, 166 S.W.3d 270 (Tex. Crim. App. 2005).

alleged the murder of the two other victims as aggravating circumstances."[28] Saenz was convicted "of three counts of capital murder."[29] Under each count, the jury found that Saenz would not be a future danger, and life imprisonment was imposed for each count.[30] The only issue that the Texas court decided was whether Saenz "had been subjected to multiple punishments for the same offense in violation of the Double Jeopardy clause, when separate judgments for the offense of capital murder were entered for each victim of a multiple murder committed in the same criminal transaction."[31] After surveying the legislative history of section 19.03(a)(7)(A), the Texas court held that the Double Jeopardy clause had been violated and ruled that Saenz could receive only one life sentence for his crime of multiple murder.[32]

In construing section 19.03(a)(7)(A), the Texas court concluded in *Saenz* that "the statute reflects that the killing of at least two persons allows the State to charge a single count of capital murder."[33] The court recounted that the impetus behind the enactment of section 19.03(a)(7)(A) was the "State's inability to seek the death penalty as punishment for the concomitant murders of six Dallas nightclub patrons by [an individual],"[34] and that the Texas legislature's

---

[28] *Id.* at 271.

[29] *Id.*

[30] *Id.*

[31] *Id.* at 271-72.

[32] *Id.* at 272-74.

[33] *Id.* at 273.

[34] *Id.*

goal was not to create a means to seek multiple death penalties but to "mak[e] it possible for the State to *execute* mass murderers."[35]   In the concluding paragraph of its opinion in *Saenz*, the court held that "[t]he most reasonable interpretation of the statute and its legislative intent is that, under the circumstances presented here [Saenz's case], the statute allows only a single capital murder conviction."[36]   The court held that the Double Jeopardy clause had been violated "when the State charged appellant with three separate counts of capital murder under Section 19.03(a)(7)(A) because the charges rely on the same three murders for each charge."[37]

It is not clear from the *Saenz* opinion whether Saenz was charged in precisely the same manner as Paredes was charged in the present case, and we do not know from the *Saenz* opinion how the jury instruction was worded in that case. We can discern, however, that the holdings in *Saenz* do not directly answer the question of whether the Texas legislature intended to permit a capital murder conviction under section 19.03(a)(7)(A) to be established by alternative means such as that the defendant murdered A and either B or C, B and either A or C, or C and either A or B.  The opinion in *Saenz* does at least hint that the Texas Court of Criminal Appeals does not think that such a charge would be proper, but instead is of the view that a single predicate murder must be alleged together with an allegation that one or more additional murders was committed. In discussing the allowable unit of prosecution under section 19.03(a)(7)(A), the Texas court said "a predicate to charging capital murder" is "that a defendant

---

[35] *Id.*

[36] *Id.* at 274.

[37] *Id.*

commit murder as defined under Section 19.02(b)(1)."[38]  The Texas court reasoned that the "aggravating circumstance for a capital murder prosecution under Section 19.03(a)(7)(A) . . . is the murder of 'more than one person during the same criminal transaction.'"[39]  The Texas court continued, "[t]he commission of at least one murder, then, *which is in addition to the predicate murder*, is the aggravating circumstance required by Section 19.03(a)(7)(A)."[40]  This would seem consistent with the requirement in section 19.03(a)(7)(A) that a person commit a knowing or intentional murder of one individual under section 19.02(b)(1). The Texas Court of Criminal Appeals has long held that under section 19.02(b)(1), the murder of only one specific individual may be charged.[41]  The unit of prosecution under section 19.02(b)(1) is a single, named individual.[42]

We nevertheless do not have a definitive construction of section 19.03(a)(7)(A) from the Texas Court of Criminal Appeals as to whether it is proper in a jury charge to permit the crime of multiple murder to be established by alternate means of varying combinations of more than one murder.  However,

---

[38] *Id.* at 272; *see also* TEX. PENAL CODE .§ 19.02(b)(1) ("A person commits an offense if he . . . intentionally or knowingly causes the death of an individual.").

[39] *Saenz v. State*, 166 S.W.3d 270, 273 (Tex. Crim. App. 2005).

[40] *Id.* (emphasis added).

[41] *See, e.g.*, *Graham v. State*, 19 S.W.3d 851, 854 (Tex. Crim. App. 2000) (striking down an indictment that alleged that the defendant had committed a single capital murder by (1) causing the death of Hurtado and Giraldo during the same criminal transaction; (2) causing the death of Hurtado while in the course of robbing him; or (3) causing the death of Jesus Garcia-Castro while in the course of robbing him.  The court determined that, because "two of the three paragraphs allege[d] different murders as the basis for the capital charge," the indictment actually "alleged two distinct capital offenses.").

[42] *See Saenz*, 166 S.W.3d at 272 (confirming that "the allowable unit of prosecution is each individual victim" under section 19.02(b)(1)).

the trial court's charge to the jury that convicted Paredes allowed such varying combinations.  The jury instructions did not require all jurors to agree on whether Paredes killed Bravo and Cain or Torres, Cain and Bravo or Torres, or Torres and Cain or Bravo.  In reviewing the trial court's charge in this case, the Texas courts have held that this did not violate Paredes's due process rights, and we will therefore consider whether United States Supreme Court decisions have clearly established that this jury charge was beyond constitutional limits on how a state may define the elements of an offense.[43]

## B

We conclude that the Texas courts did not unreasonably apply clearly established federal law as determined by the United States Supreme Court because whether the jury charge at issue went beyond the limits of how a state may define a single offense of multiple murder is not clearly established.  Indeed, the means by which we are to determine if the process accorded Paredes in submitting the question of his guilt to the jury was due is not clearly established.

As discussed above, in *Schad*, Arizona law permitted a murder conviction to rest on proof that a defendant "murdered either with premeditation or in the course of committing a robbery."[44]  The plurality opinion in *Schad* reasoned that "the petitioner's real challenge is to Arizona's characterization of first-degree murder as a single crime as to which a verdict need not be limited to any one statutory alternative."[45]  The petitioner had contended "that premeditated

---

[43] *See Schad v. Arizona*, 501 U.S. 624, 631 (1991); *see also id*. at 649 (SCALIA, J., concurring).

[44] *Id*. at 630.

[45] *Id*. at 630-31.

murder and felony murder [were] separate crimes as to which the jury must return separate verdicts."[46] According to the plurality, the issue "then, is one of the permissible limits in defining criminal conduct, as reflected in the instructions to jurors applying the definitions, not one of jury unanimity."[47]

The disagreement between the plurality and concurring opinions in *Schad* concerned the reasoning leading to their shared conclusion that the jury instruction was not unconstitutional. While both opinions acknowledged that the ultimate question to be resolved was whether the process that was received was due, the two opinions diverged beyond that point, with no resulting majority view.

In answering whether the Due Process Clause was violated, the plurality opinion began with the understanding that there are "limits on a State's capacity to define different courses of conduct . . . as merely alternative means of committing a single offense, thereby permitting a defendant's conviction without jury agreement as to which course [of conduct] actually occurred."[48] The plurality reasoned that the "practical consequence" of the "axiomatic requirement of due process that a statute may not forbid conduct in terms so vague that people of common intelligence would be relegated to differing guesses about its meaning" is "that a defendant charged under a valid statute will be in a position to understand with some specificity the legal basis of the charge

---

[46] *Id*. at 631.

[47] *Id*.

[48] *Id*. at 632.

against him."[49] The plurality further reasoned that "no person may be punished criminally save upon proof of some specific illegal conduct."[50] This "simply [raises] the problem of describing the point at which differences between means become so important that they may not reasonably be viewed as alternatives to a common end, but must be treated as differentiating what the Constitution requires to be treated as separate offenses."[51]

The plurality opinion in *Schad* concluded that in order to determine whether a State has exceeded constitutional bounds in prescribing the alternative means of committing a single crime, it would be impractical to "try[] to derive any single test for the level of definitional and verdict specificity permitted by the Constitution."[52] The plurality opinion set forth the following parameters for ascertaining "fundamental fairness" and "rationality," reminding us that there is "a threshold presumption of legislative competence to determine the appropriate relationship between means and ends in defining the elements of a crime"[53]:

> [W]e think that instead of such a [single] test our sense of appropriate specificity is a distillate of the concept of due process with its demands for fundamental fairness and for the rationality that is an essential component of that fairness. In translating these demands for fairness and rationality into concrete judgments about the adequacy of legislative determinations, we look both to history

---

[49] *Id.* at 632-33.

[50] *Id.* at 633.

[51] *Id.*

[52] *Id.* at 637.

[53] *Id.* 637-38.

and wide practice as guides to fundamental values, as well as to narrower analytical methods of testing the moral and practical equivalence of the different mental states that may satisfy the *mens rea* element of a single offense.  The enquiry is undertaken with a threshold presumption of legislative competence to determine the appropriate relationship between means and ends in defining the elements of a crime.[54]

The plurality opinion in *Schad* then reiterated its "inability to lay down any bright-line test," noting "the difficulty of deciding, as an abstract matter, what elements an offense must comprise."[55]  The plurality "stressed that . . . the state legislature's definition of the elements of the offense is usually dispositive," although "there are obviously constitutional limits beyond which the States may not go."[56]

In his concurring opinion, Justice Scalia concluded, as had the plurality, that "it has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission."[57]  He also observed, as had the plurality, "that one can conceive of novel 'umbrella' crimes (a felony consisting of either robbery or failure to file a tax return) where permitting a 6-to-6 verdict would seem contrary to due process."[58]  Justice Scalia, however, took issue with the plurality's use of a fundamental fairness assessment of the procedural or "so-called 'substantive'"

---

[54] *Id.* at 637 (citation omitted).

[55] *Id.* at 639.

[56] *Id.* (alteration in original).

[57] *Id.* at 649 (SCALIA, J., concurring).

[58] *Id.* at 650.

due process components when testing "an American tradition that is deep and broad and continuing."[59]  He reasoned, "[i]t is precisely the historical practices that *define* what is 'due,'"although he recognized that a "'[f]undamental fairness' analysis may appropriately be applied to *departures* from traditional American conceptions of due process."[60]

Justice Scalia then addressed the plurality's discussion of moral equivalency, pointing out that the petitioner in *Schad* was not complaining about the lack of moral equivalency between premeditated murder and killing in the course of a robbery.[61]  The petitioner's objection was that "as far as we know, only six jurors *believed* he was participating in a robbery, and only six *believed* he intended to kill."[62]  Justice Scalia posited that "[p]erhaps moral equivalency is a *necessary* condition for allowing such a verdict to stand, but surely the plurality does not pretend that it is *sufficient*."[63]  It was in this context that Justice Scalia hypothesized, "[w]e would not permit, for example, an indictment charging that the defendant assaulted either X on Tuesday or Y on Wednesday, despite the 'moral equivalence' of those two acts."[64]  In our prior opinion granting a COA on the issues presently under consideration, we quoted

---

[59] *Id.*

[60] *Id.*

[61] *Id.* at 651.

[62] *Id.*

[63] *Id.*

[64] *Id.*

this passage from the concurring opinion in *Schad*.[65]  We observed that this example "informs Paredes's case,"[66] but we did not decide whether the jury charge in Paredes's case violated his right to due process.  We noted the *Schad* plurality's due process concerns about the "fluid conceptual boundary between calling two things different crimes and calling them different methods of committing the same crime," and also noted that this "is an area with no well-defined definitions."[67]

After considering additional briefing and hearing oral arguments on the merits of this habeas issue, we can now conclude that the Texas courts did not unreasonably apply clearly established federal law as determined by the Supreme Court with regard to the jury charge given in Paredes's case.  Were we to undertake the fundamental fairness analysis adopted by the plurality in *Schad*, with its various components, the outcome would be far from clear.  There are many variables and considerable room for differing viewpoints in such an analysis, and the Supreme Court's determinations have not thus far given the guidance necessary to apply the fundamental fairness test fashioned by the plurality to the present circumstances with any confidence that the outcome would be derived from "clearly established" law.

Nor can we with any confidence discern where the jury charge in the present case lies on the continuum discussed in Justice Scalia's concurring opinion or what the outcome would be when the principles set forth in that opinion are applied.  Hypotheses similar to those set forth in the concurring

---

[65] *Paredes I*, 574 F.3d 281, 293 (5th Cir. 2009).

[66] *Id.*

[67] *Id.*

No. 07-70009

opinion and similar to the facts before us raise difficult questions. Does due process require a jury to agree on precisely which defendant killed which individuals when it is proven that two defendants each threw two grenades into a crowded area, ten individuals were killed, but forensics cannot determine which of the grenades was the cause of any particular individual's death? In the case presently before us, it may be that the Texas multiple murder law, as applied by the Texas trial court, is a departure from traditional American conceptions of due process but that a fundamental fairness test would result in a determination that the process given was due. On the other hand, the principles articulated in Justice Scalia's concurring opinion in *Schad* might lead to the conclusion that all jurors must believe that a defendant killed at least two specifically identified individuals to establish multiple murder.

We do not undertake the fundamental fairness analysis described by the plurality opinion or the analyses the concurring opinion discusses in *Schad* because were we to do so, we would be applying principles to circumstances that the Supreme Court has yet to address. We would not be "merely []" illuminat[ing]" existing Supreme Court precedent.[68] We would be extending the application of Supreme Court precedent, which we are not permitted to do under AEDPA.

## C

The fundamental fairness test embraced by the plurality in *Schad* and recognized by the concurring opinion in *Schad* as appropriate in some

---

[68] *Renico v. Lett*, 130 S. Ct. 1855, 1866 (2010) (holding that a decision of the court of appeals could not "be understood merely to 'illuminat[e]'" the Supreme Court's decision in *Arizona v. Washington*, 434 U.S. 497 (1978), which had considered the breadth of a trial court's discretion in granting a mistrial).

No. 07-70009

circumstances presents fairly broad, fluid parameters, as we have noted. In another context, the Supreme Court has recently explained that a "general standard triggers another consideration under AEDPA": "When assessing whether a state court's application of federal law is unreasonable, 'the range of reasonable judgment can depend in part on the nature of the relevant rule' that the state court must apply."[69] The *Renico* decision emphasized that "[b]ecause AEDPA authorizes federal courts to grant relief only when state courts act *unreasonably*, it follows that '[t]he more general the rule' at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'"[70] While the due process analyses set forth in the plurality and concurring opinions in *Schad* differ in many respects from a trial court's broad discretion in deciding whether a jury is deadlocked and therefore whether to grant a new trial, which was the applicable legal standard in *Renico*, the due process analyses in *Schad* have considerable "potential for reasoned disagreement among fair-minded judges" as to whether the jury charge in the present case met due process requirements. Accordingly, it cannot be said that the Texas court unreasonably applied federal law even if the due process parameters to be applied in the present context were clear.

Because the Texas court did not unreasonably apply clearly established federal law as determined by the Supreme Court, Paredes is not entitled to

---

[69] *Id.* at 1864. *Renico* also held that the legal standard to be applied in determining whether a trial court erred in granting a mistrial due to jury deadlock was "whether there was an abuse of the 'broad discretion' reserved to the trial judge." *Id.* at 1865.

[70] *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (alterations in original).

19

No. 07-70009

habeas relief with regard to the fact that the jury instructions did not require all jurors to agree on the identity of at least two of the three victims allegedly killed by Paredes.

## IV

Our denial of habeas relief with regard to the jury instruction issue is based on an additional, independent ground. Paredes cannot establish prejudice from the disjunctive jury charge because the jury was also permitted to conclude that he was criminally responsible for the murders under Texas's law of parties even if he did not personally shoot any of the victims.

Paredes does not contend that permitting the jury to convict him of capital murder based on an alternative allegation of his responsibility for the action of others violated his due process rights to a unanimous verdict. Nor does he contend that any error in submitting three other alternative means of committing capital murder (namely, that Paredes either murdered Torres and Bravo or Cain, Cain and Bravo or Torres, or Bravo and Cain or Torres) vitiates *all* of the jury's findings.[71] The jury's finding regarding the law of parties would not be vitiated by any such error, so there is no structural error, and Paredes does not contend that there is structural error.[72]

---

[71] *See Hedgpeth v. Pulido*, 129 S. Ct. 530, 532 (2008) (concluding that harmless-error analysis applied to the jury charge error at issue "so long as the error at issue does not categorically 'vitiat[e] *all* the jury's findings'" (quoting *Neder v. United States*, 527 U.S. 1, 11 (1999))).

[72] *See Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993) (distinguishing "structural defects" in the trial, "which defy analysis by 'harmless-error standards,'" from trial errors, which are subject to harmless-error analysis (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991))).

No. 07-70009

The evidence is overwhelming that Paredes was guilty of capital murder under Texas's law of parties.  Based on the record before us, we conclude that any error in submitting alternative theories of who Paredes shot did not have a substantial and injurious effect or influence in determining the jury's verdict. Any error in failing to require all jurors to agree which of two or more victims that Paredes killed was harmless in light of the general charge that included the law of parties, a general verdict of guilty, and the virtually unchallenged evidence of Paredes's responsibility under the law of parties.

## V

Paredes next argues that he received ineffective assistance of counsel because his lawyer failed to object to the disjunctive jury charge regarding the identity of the victims shot by Paredes.  To obtain relief on this claim, Paredes must show that (1) he received constitutionally ineffective assistance, and (2) the state court's ruling that he did not receive ineffective assistance is contrary to, or an unreasonable application of, clearly established federal law.[73]  To demonstrate ineffective assistance of counsel, Paredes must show that his attorney's performance fell "below an objective standard of reasonableness" and prejudiced his defense.[74]

Even if we assume that, by failing to object to the jury instructions, the performance of Paredes's attorney fell below an objective standard of reasonableness, Paredes suffered no prejudice.  As noted, *supra*, if the jury had been required to agree on the identity of at least two of Paredes's victims and

---

[73] *Carty v. Thaler*, 583 F.3d 244, 258-59 (5th Cir. 2009).

[74] *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984).

21

No. 07-70009

failed to agree, Paredes would have been convicted of capital murder because of the overwhelming evidence that Paredes was criminally responsible for the killings under Texas's law of parties. Accordingly, Paredes is not entitled to habeas relief on his ineffective assistance claim.

\*      \*      \*

For the foregoing reasons, we AFFIRM the district court's denial of habeas relief.