IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1323-08






CHRISTOPHER GARFIAS, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SECOND COURT OF APPEALS


TARRANT COUNTY





 Keller, P.J., filed a concurring opinion.



 Appellant was involved in the shooting of a store clerk during a robbery. The State
prosecuted him for aggravated robbery and aggravated assault. The aggravated robbery count in the
indictment alleged, inter alia, that appellant did "threaten or place [the victim] in fear of imminent
bodily injury or death," while the aggravated assault count alleged, inter alia, that appellant did
"cause bodily injury." Although these elements result in offenses that differ under the standard
articulated in Blockburger v. United States, (1) appellant contends that the offenses were nevertheless
the "same" for Double Jeopardy purposes. The court of appeals found that appellant failed to
preserve error. Appellant contends that he did not need to preserve error and that a Double Jeopardy
violation occurred. 

 The court of appeals correctly observed that, unless a Double Jeopardy violation is apparent
on the face of the record (and enforcement of the usual rules of procedural default serves no
legitimate state interests), a defendant is required to preserve his Double Jeopardy claim in some
fashion. (2) In addressing the preservation issue, however, the appellate court assumed that the
Blockburger "same elements" test was the only test for determining whether a Double Jeopardy
violation is apparent on the face of the record. (3) That assumption conflicts with our holding in Bigon
v. State, (4) which held that a Double Jeopardy violation can be shown on the face of the record through
an Ervin (5) analysis of other factors indicating that the Legislature intended that the offenses be
considered the "same." (6) The "face of the record" standard is concerned with facts--such as what
the jury intended when it delivered a general verdict (7)--not with law, which an appellate court is
ordinarily free to consider without restriction. (8) Thus, I join the Court's opinion to remand this case
to the court of appeals for further consideration.

 Judge Johnson also joins the Court's opinion, but in her concurring opinion she expresses
the view that appellant is entitled to relief. I believe that expressing such a view is premature, since
the court of appeals has not yet had a chance to address the matter. But since that view has been
expressed, I think it is important to articulate what I believe is the correct analysis.

 Appellant contends that Double Jeopardy prevents prosecutors from "artfully pleading the
manner and means, pleading variations of greater and lesser included offense so that they survive
a Blockburger analysis, or by conceptualizing several offenses in the course of one culpable act." 
He argues that a prosecutor cannot arbitrarily divide a crime into separate units when only a single
crime has actually been committed. He relies upon a number of cases for the proposition that the
offenses at issue here comprised a single criminal act for double jeopardy purposes. He also
contends that robbery and assault share the same method of measuring the allowable unit of
prosecution: the assault of each victim, (9) and he argues that only a single unit of prosecution--the
shooting--occurred here. 

 Addressing appellant's complaint requires an understanding of the two ways in which
offenses can be the same or different under Double Jeopardy law when two statutes are involved:
(1) by elements, and (2) by units. (10) For a Double Jeopardy violation to occur, the offenses at issue
must be the "same" in both respects. (11) 

 An elements inquiry is limited to the law and the charging instrument. (12) In determining
whether offenses are the same or different under such an inquiry, the Blockburger test sets out the
starting presumption, but that presumption can be rebutted by other indicia clearly manifesting a
legislative intent to the contrary. (13) Under Blockburger, "where the same act or transaction
constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether
there are two offenses or only one, is whether each provision requires proof of a fact which the other
does not." (14) In the multiple punishments context, if the offenses have the same elements under
Blockburger, then an analysis can occur under Missouri v. Hunter (15) to determine whether the
Legislature nevertheless intended to allow multiple punishments. (16) Conversely, if the offenses have
different elements under Blockburger, then an analysis can occur under Ervin to determine whether
the Legislature nevertheless intended the offenses to be treated as the same. (17) The Hunter/Ervin
analysis is part of the elements aspect of Double Jeopardy law. (18) The allowable unit of prosecution
prescribed for the offenses is a relevant consideration under an Ervin analysis, (19) but only in the
abstract, in an effort to determine whether, under the law and the charging instrument, the offenses
are considered to be the same elementally.

 A units (or "allowable unit of prosecution") inquiry is separate, designed to determine
whether a single legally-proscribed offense has been committed more than once. (20) A units inquiry
can also be divided into two parts: (1) what the unit is, (21) and (2) whether the requisite number of
units have been shown. (22) This inquiry involves determining such things as whether there were two
murder victims, whether a victim who was assaulted on Monday was assaulted again on Tuesday,
or whether multiple kinds of sex acts were committed against a victim. Evidence at trial can be
considered in determining whether the requisite number of units has been shown. (23) A units inquiry
might more commonly arise when a single statute is involved (24) and a court is trying to discern how
to divide conduct (e.g., a sexual assault with multiple manners and means) into units. (25) Parsing a
single statute "is unlike a situation involving different statutes, which, by itself, is some indication
of legislative intent to authorize multiple prosecutions simply because the offenses are separately
defined in different statutes." (26) So, while a determination that the elements are different under the
Blockburger test sets up a presumption in a multiple-statute elements inquiry, no such presumption
is created in a single-statute units inquiry. (27) Nevertheless, if offenses under different statutes are the
"same" elementally, then a units analysis would be appropriate if, for example, the pleadings or the
evidence indicates that there are different victims. (28) 

 If the offenses of aggravated robbery and aggravated assault were defined within the same
statute, then a units analysis might by itself be appropriate to resolve whether the offenses are the
same. But aggravated robbery and aggravated assault are defined in different sections--indeed,
different chapters--of the Penal Code. As explained above, the fact that the offenses involved are
defined in different statutes is some indication that the Legislature intended multiple punishments. 
Even if we accept as true that appellant's units analysis is correct, it must first be established that the
offenses are the same under an elements analysis. Because an elements analysis revolves solely
around the charging instrument and the law, it is irrelevant that evidence at trial may show that the
offenses involve the same act or very closely related acts. That the two statutes divide units in the
same way (if they do) has some bearing on the elements analysis under Ervin but is not dispositive. 
 Appellant initially relies upon Patterson v. State, which held that, under the facts of the case,
the offense of indecency with a child by exposure was incident to and subsumed by the immediately
subsequent offense of sexual assault by penetration. (29) He argues that the "fear induced by [the
victim's] perception of the gun is necessarily a part of the shooting in the same way that exposure
is necessarily a part of penetration." But Patterson is distinguishable from this case for two reasons:
First, Patterson was not decided on Double Jeopardy grounds. (30) And second, the offenses at issue
in Patterson were clearly the same elementally under the Blockburger test. (31) 

 Appellant also relies upon Littrell v. State, which held that the offenses of felony murder and 
aggravated robbery were the same when the aggravated robbery in question was the underlying
felony for the felony murder. (32) Appellant contends that Littrell is similar to the present case because
the indictment in Littrell also alleged two unique elements: (1) an "act clearly dangerous to human
life" in connection with the murder, and (2) that "the victim was placed in fear of imminent bodily
injury and death aggravated by the use and exhibition of a deadly weapon" in connection with the
aggravated robbery. Appellant is mistaken. Aggravated robbery was wholly incorporated into the
felony murder charge--resulting in the offenses being the same under the Blockburger test. (33)

 Appellant further contends that Hawkins and Cavazos "underscore the importance of
determining the allowable unit of prosecution as a key to resolving Double Jeopardy questions." 
Those cases both involved prosecutions under a single section of the Penal Code (robbery in
Hawkins and burglary in Cavazos) (34) while the present case involves prosecution under two different
sections. As discussed above, when a single statute is at issue, courts conduct only a units inquiry,
but when two statutes are at issue, a units inquiry is only half the battle--the offenses must be the
same by both elements and units for a Double Jeopardy violation to arise. 

 Finally, appellant relies upon Bigon, a case that held, under an Ervin analysis, that the
offenses of felony murder, intoxication manslaughter, and manslaughter (involving the same victim)
were the "same" for Double Jeopardy purposes. (35) We observed in Bigon that intoxication
manslaughter used to be contained in the same chapter as all of the homicide offenses and was
framed as an alternative way to commit manslaughter. (36) We explained that we had previously
suggested in Ervin that the move to Chapter 49 was largely for housekeeping purposes. (37) We also
observed that intoxication manslaughter retained "manslaughter" in its title and was still considered
a homicide offense. (38) We further explained that intoxication manslaughter and murder both had the
same focus on the death of an individual, the offenses were both result-oriented, the allowable unit
of prosecution--one offense per victim--was the same, and that where the underlying felony for
felony murder was a DWI, "it is hard to fathom that the legislature intended for one drunk-driving
accident to result in multiple homicide convictions for each victim." (39) 

 Homicide offenses have always been considered to be especially closely related. The Penal
Code introduces the homicide chapter with a section that lists the types of homicides: "Criminal
homicide is murder, capital murder, manslaughter, or criminally negligent homicide." (40) Before the
1994 amendments, this provision referred to "murder, capital murder, voluntary manslaughter,
involuntary manslaughter, or criminally negligent homicide" (41) and what is now intoxication
manslaughter was one means of committing involuntary manslaughter. (42)

 The offenses at issue in the present case are not as closely related. Aggravated assault and
aggravated robbery have always been contained in separate chapters--not just separate sections--of
the Penal Code. No statute asserts any relationship between the aggravated assault and aggravated
robbery offenses or between their underlying offenses of assault and robbery. (43)

 In his pro se petition for discretionary review, appellant claimed that "bodily injury" is an
element of aggravated robbery, and that the jury charge "added to the confusion" when it failed to
contain that element. Appellant's claim is not entirely correct because "bodily injury" is an
alternative element rather than a necessary element, (44) but I will address the implication of his claim
that the existence of common elements makes the offenses sufficiently closely related to be
considered the same under Ervin.

 The aggravated robbery and aggravated assault statutes contain a number of parallel
elements. Both allow an underlying lesser offense to be aggravated by the use of a deadly weapon
(the aggravating factor alleged in the indictment in this case) or by the infliction of serious bodily
injury. (45) The underlying lesser offenses of assault and robbery both contain alternative manners and
means involving "bodily injury" and a "threat." (46) For the purpose of determining a lesser-included
offense under § 37.09 of the Code of Criminal Procedure, we have recognized that assault may or
may not be a lesser-included offense of robbery depending on which alternative manners and means
are alleged: 

For example, robbery may be committed either by causing bodily injury or by
threatening imminent bodily injury. Each of these forms of robbery includes, as a
lesser offense, a form of assault that the other does not include. An allegation of
robbery by threat includes the lesser offense of assault by threat; it does not include
the offense of assault by causing bodily injury. Conversely, an allegation of robbery
by causing bodily injury would include the lesser offense of assault by causing bodily
injury, but it would not include the offense of assault by threats. (47) 


Given Ervin, the law with respect to lesser-included offenses does not necessarily control the Double
Jeopardy question. But the presence of parallel provisions in the two statutes is not enough to
convince me that the Legislature clearly intended to prohibit punishment for both aggravated assault
and aggravated robbery offenses when those offenses have different elements under Blockburger.

 And, though the aggravated assault and aggravated robbery statutes contain parallel elements,
there is at least one substantial difference in the underlying assault and robbery statutes that relates
to the case hand. The "threat" portion of the assault statute provides that a person commits an
offense if he "intentionally or knowingly threatens another with imminent bodily injury, including
the person's spouse." (48) The counterpart provision in the robbery statute provides that a person
commits an offense if he "intentionally or knowingly threatens or places another in fear of imminent
bodily injury or death." (49) As can be seen, the robbery statute contains the phrase "places . . . in fear
of" that is not contained in the assault statute. In Williams v. State, the First Court of Appeals
indicated that this difference in language results in a significant difference in the meaning of the two
statutes, because a threat is not actually required to establish robbery:

We note that an element of the crime of robbery, "places another in fear of imminent
bodily injury," TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 1989) (emphasis
added), differs from an often compared, but vastly dissimilar element for the crime
of assault, "threatens another with imminent bodily injury," TEX. PENAL CODE
ANN. § 22.01(a)(2) (Vernon 1989) (emphasis added). The general, passive
requirement that another be "placed in fear" cannot be equated with the specific,
active requirement that the actor "threaten another with imminent bodily injury."
Under the "placed in fear" language in section 29.02 of the Texas Penal Code, the
factfinder may conclude that an individual fear or was "placed in fear," in
circumstances where no actual threats were conveyed by the accused. (50)


In published opinions, the Third, Sixth, and Fourteenth courts of appeals have followed Williams. (51) 
In Wilmeth v. State, the Twelfth Court of Appeals indicated that "a menacing glance" could be
sufficient to show that the defendant placed a victim in fear of imminent bodily injury. (52)

 It is also true that the robbery statute does not contain the phrase "including the person's
spouse" and the assault statute does not include the word "death," though it is unclear whether these
differences in language create a substantive difference in the offenses. Nevertheless, they are
differences that undermine the notion that the Legislature indicated an intent that the offenses be
treated the same by setting them up with parallel provisions. (53) 

 With these comments, I join the Court's opinion.


Filed: June 29, 2011

Do not publish
1. 284 U.S. 299 (1932).
2. Garfias v. State, No. 2-06-398-CR, slip op. at 2 (Tex. App.-Fort Worth June 12, 2008) (not
designated for publication) (citing Gonzalez v. State, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000)).
3. Garfias, slip op. at 2-3, 6.
4. 252 S.W.3d 360 (Tex. Crim. App. 2008).
5. Ex parte Ervin, 991 S.W.2d 804 (Tex. Crim. App. 1999).
6. Bigon, 252 S.W.3d at 369.
7. See Gonzalez, 8 S.W.3d at 645.
8. I do not consider at this time whether this rule encompasses the law of other states, foreign
countries, or Texas municipalities, which are subject to special rules of judicial notice. See Tex. R.
Evid. 202-204.
9. See Phillips v. State, 787 S.W.2d 391 (Tex. Crim. App. 1990) (assault); Ex parte Hawkins,
6 S.W.3d 554 (Tex. Crim. App. 1999) (robbery). 
10. Hawkins, 6 S.W.3d at 557 n.8 (discussing legal elements versus units of prosecution).
11. Id. (quoting Akhil Reed Amar, Double Jeopardy Law Made Simple, Yale L.J. 1807, 1817-18 (1997) ("an offense must not only be the same in law--it must also be the same in fact")).
12. Bigon, 252 S.W.3d at 370; Hall v. State, 225 S.W.3d 524, 532-33 (Tex. Crim. App. 2007).
13. Littrell v. State, 271 S.W.3d 273, 276 (Tex. Crim. App. 2008) (If one offense "is a
lesser-included" of the other under Blockburger, "the judicial presumption is that they are the same
for double-jeopardy purposes" and the "second question, in that event, is whether the Legislature has
clearly expressed a contrary intention that the accused should in fact be punished for both the greater
and the lesser-included offenses."); id. at 277 n.23 ("Of course, even when two statutorily defined
offenses are clearly not the same under a Blockburger analysis, other considerations might make it
clear that the Legislature nevertheless intended that an accused not be punished under both
provisions.") (citing Ervin and Bigon). See also Bigon, 252 S.W.3d at 370 ("When multiple
punishments arise out of one trial, the Blockburger test is the starting point in analyzing the two
offenses."); Ervin, 991 S.W.2d at 804 ("[T]he Blockburger test cannot authorize two punishments
where the legislature clearly intended only one."); Gonzales v. State, 304 S.W.3d 838, 845-46 (Tex.
Crim. App. 2010) ("The traditional indicium of . . . legislative intent is the so-called 'same elements'
test of Blockburger," but "even if a straightforward application of the Blockburger test would
suggest that two offenses are not the 'same' for double jeopardy purposes," the offenses are
nevertheless considered the same, "if other indicia manifest a legislative intent that an accused not
be punished for both offenses") (citing Ervin).
14. 284 U.S. at 304.
15. 459 U.S. 359 (1983).
16. See id.; Ervin, 991 S.W.2d at 807. A Missouri v. Hunter inquiry may not be allowed in
the multiple prosecution context due to finality concerns. See State v. Perez, 947 S.W.2d 268, 270
n.3 (Tex. Crim. App. 1997).
17. See Gonzales, 304 S.W.3d at 845-46 (discussing Ervin). This analysis can occur in both
the multiple prosecution and the multiple punishment contexts.
18. See Hall, 225 S.W.3d at 533 n.39 (recognizing that Hunter involved a cognate pleadings
analysis); Bigon, 252 S.W.3d at 372 (under an Ervin analysis, looking at charging instrument
allegations to determine the underlying felony in felony murder prosecution); Ervin, 991 S.W.2d at
807 (recognizing "the inverse conclusion" from Hunter).
19. Bigon, 252 S.W.3d at 371-72.
20. See Sanabria v. United States, 437 U.S. 54, 69-70, 69 n.24 (1978); Saenz v. State, 166
S.W.3d 270, 272-74 (Tex. Crim. App. 2005).
21. See e.g. Vick v. State, 991 S.W.2d 830, 832-34 (Tex. Crim. App. 1999) (penetration of
anus and sexual organ different units in aggravated sexual assault); Ex parte Hawkins, 6 S.W.3d
554, 556 (Tex. Crim. App. 1999) (different victims are different units in a robbery); Ex parte
Cavazos, 203 S.W.3d 333, 335-37 (Tex. Crim. App. 2006)(entry is the unit in a burglary).
22. Blockburger, 284 U.S. at 303 (second drug sale was a separate offense because it "was not
the result of the original impulse, but of a fresh one"); Ex parte Goodbread, 967 S.W.2d 859, 860-61
(Tex. Crim. App. 1998) (can have multiple prosecutions for different incidents of the same type of
sexual assault).
23. Blockburger, 284 U.S. at 303; Goodbread, 967 S.W.2d at 860 ("For Double Jeopardy
purposes, the same offense means the identical criminal act, not the same offense by name . . . . when
one cannot determine from the State's pleadings whether the offenses prosecuted are the same, the
court must look to the proof offered at trial.") (Citing and quoting favorably from Luna v. State, 493
S.W.2d 854 (Tex. Crim. App. 1973)); id. at 861 (We look to evidence at trial to determine what
instances of conduct conforming to the indictment are jeopardy-barred.); see also Quintano v.
People, 105 P.3d 585, 592, 595 (Colo. 2005) ("[W]hile we do not adopt any specific list of factors
to determine whether the defendant's acts constitute factually distinct offenses, we look to all the
evidence introduced at trial to determine whether the evidence on which the jury relied for conviction
was sufficient to support distinct and separate offenses.").
24. See Bigon, 252 S.W.3d at 371-72 ("Usually, analysis of an allowable unit of prosecution
involves a situation in which two offenses from the same statutory section are charged.").
25. See Vick, 991 S.W.2d 833, 833 n.1 (arriving at the same result under either the
Blockburger test or an inquiry regarding the how to divide the offense into separate prosecutable
acts).
26. Id. at 832.
27. See Vineyard v. State, 958 S.W.2d 834, 836 n.5 (Tex. Crim. App. 1998) ("We also note
this Court has stated the Blockburger test is not 'precisely applicable' to cases like this where a
defendant's conduct violates one statutory provision more than once.").
28. See Hawkins, 6 S.W.3d at 557 n.8.
29. 152 S.W.3d 88, 92 (Tex. Crim. App. 2004)(discussing interplay between Tex. Penal
Code §§ 21.11(a)(2)(A) and 22.021(a)(1)(B)(i)).
30. Id. at 90 (deciding the issue under a statute addressing the concurrent versus consecutive
sentencing).
31. See id. at 94, 94 n.3 (Hervey, J., concurring) (observing that indecency by exposure was
a lesser included offense of aggravated sexual assault under Blockburger).
32. 271 S.W.3d 276-79 (Tex. Crim. App. 2008).
33. Id. at 276-77.
34. See Hawkins and Cavazos, supra.
35. 252 S.W.3d at 368-72.
36. Id. at 371.
37. Id.; see also Ervin, 991 S.W.2d. at 816.
38. Bigon, 252 S.W.3d at 371.
39. Id. at 371-72.
40. Tex. Penal Code § 19.01(b).
41. Tex. Penal Code § 19.01(b) (West 1992).
42. Id., § 19.05 (West 1992).
43. See Tex. Penal Code, Chs. 22 & 29, passim.
44. See id., § 29.02.
45. Compare id. § 22.02(a)(1), (2) with id., § 29.03(a)(1), (2).
46. Compare id. § 22.01(a)(1), (2) with id., § 29.02(a)(1), (2).
47. Bell v. State, 693 S.W.2d 434, 436 n.3 (Tex. Crim. App. 1985) (citation omitted, citing
Martinez v. State, 599 S.W.2d 622, 624 (Tex. Crim. App. 1980) (in turn, citing Mitchell v. State 543
S.W.2d 637 (Tex. Crim. App. 1976) (holding that aggravated robbery by threat does not include
aggravated assault by causing bodily injury)). 
48. Tex. Penal Code § 22.01(a)(2) (emphasis added).
49. Id., § 29,02(a)(2) (emphasis added).
50. 827 S.W.2d 614, 616 (Tex. App.-Houston [1st Dist.] 1992) (emphasis in original).
51. Welch v. State, 880 S.W.2d 225, 227 (Tex. App.-Austin 1994); Howard v. State, 306
S.W.3d 407, 410-11 (Tex. App.-Texarkana 2010); Burton v. State, 230 S.W.3d 846, 852 (Tex.
App.-Houston [14th Dist. 2007). 
52. 808 S.W.2d 703, 706 (Tex. App.-Tyler 1991). 
53. Even if one viewed the phrase "threatens or places another in fear of imminent bodily
injury or death" as involving alternate manners and means ("threatens" vs. "places"), and one viewed
the parallel nature of the "threatens" manner and means as sufficient to create a double jeopardy
problem, then one would have to conclude that appellant forfeited error under Gonzalez, 8 S.W.3d
640, because the jury charge included both the "threatens" and "places" manner and means, appellant
failed to object, and we do not know which manner and means the jury rested its verdict upon. 
Given my resolution of the question, however, I need not address appellant's claim that Gonzalez
should be overruled.