

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. PD-1323-08

**CHRISTOPHER GARFIAS, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE SECOND COURT OF APPEALS TARRANT COUNTY

**KELLER, P.J., filed a concurring opinion.**

Appellant was involved in the shooting of a store clerk during a robbery. The State prosecuted him for aggravated robbery and aggravated assault. The aggravated robbery count in the indictment alleged, *inter alia*, that appellant did "threaten or place [the victim] in fear of imminent bodily injury or death," while the aggravated assault count alleged, *inter alia*, that appellant did "cause bodily injury." Although these elements result in offenses that differ under the standard articulated in *Blockburger v. United States*,[1] appellant contends that the offenses were nevertheless

---

[1] 284 U.S. 299 (1932).

the "same" for Double Jeopardy purposes. The court of appeals found that appellant failed to preserve error. Appellant contends that he did not need to preserve error and that a Double Jeopardy violation occurred.

The court of appeals correctly observed that, unless a Double Jeopardy violation is apparent on the face of the record (and enforcement of the usual rules of procedural default serves no legitimate state interests), a defendant is required to preserve his Double Jeopardy claim in some fashion.[2] In addressing the preservation issue, however, the appellate court assumed that the *Blockburger* "same elements" test was the only test for determining whether a Double Jeopardy violation is apparent on the face of the record.[3] That assumption conflicts with our holding in *Bigon v. State*,[4] which held that a Double Jeopardy violation can be shown on the face of the record through an *Ervin*[5] analysis of other factors indicating that the Legislature intended that the offenses be considered the "same."[6] The "face of the record" standard is concerned with facts—such as what the jury intended when it delivered a general verdict[7]—not with law, which an appellate court is ordinarily free to consider without restriction.[8] Thus, I join the Court's opinion to remand this case

---

[2] *Garfias v. State*, No. 2-06-398-CR, slip op. at 2 (Tex. App.–Fort Worth June 12, 2008) (not designated for publication) (citing *Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000)).

[3] *Garfias*, slip op. at 2-3, 6.

[4] 252 S.W.3d 360 (Tex. Crim. App. 2008).

[5] *Ex parte Ervin*, 991 S.W.2d 804 (Tex. Crim. App. 1999).

[6] *Bigon*, 252 S.W.3d at 369.

[7] *See Gonzalez*, 8 S.W.3d at 645.

[8] I do not consider at this time whether this rule encompasses the law of other states, foreign countries, or Texas municipalities, which are subject to special rules of judicial notice. *See* TEX. R. EVID. 202-204.

to the court of appeals for further consideration.

Judge Johnson also joins the Court's opinion, but in her concurring opinion she expresses the view that appellant is entitled to relief. I believe that expressing such a view is premature, since the court of appeals has not yet had a chance to address the matter. But since that view has been expressed, I think it is important to articulate what I believe is the correct analysis.

Appellant contends that Double Jeopardy prevents prosecutors from "artfully pleading the manner and means, pleading variations of greater and lesser included offense so that they survive a *Blockburger* analysis, or by conceptualizing several offenses in the course of one culpable act." He argues that a prosecutor cannot arbitrarily divide a crime into separate units when only a single crime has actually been committed. He relies upon a number of cases for the proposition that the offenses at issue here comprised a single criminal act for double jeopardy purposes. He also contends that robbery and assault share the same method of measuring the allowable unit of prosecution: the assault of each victim,[9] and he argues that only a single unit of prosecution—the shooting—occurred here.

Addressing appellant's complaint requires an understanding of the two ways in which offenses can be the same or different under Double Jeopardy law when two statutes are involved: (1) by elements, and (2) by units.[10] For a Double Jeopardy violation to occur, the offenses at issue must be the "same" in both respects.[11]

---

[9] *See Phillips v. State*, 787 S.W.2d 391 (Tex. Crim. App. 1990) (assault); *Ex parte Hawkins*, 6 S.W.3d 554 (Tex. Crim. App. 1999) (robbery).

[10] *Hawkins*, 6 S.W.3d at 557 n.8 (discussing legal elements versus units of prosecution).

[11] *Id.* (quoting Akhil Reed Amar, *Double Jeopardy Law Made Simple*, Yale L.J. 1807, 1817-18 (1997) ("an offense must not only be the same in law—it must also be the same in fact")).

An elements inquiry is limited to the law and the charging instrument.[12] In determining whether offenses are the same or different under such an inquiry, the *Blockburger* test sets out the starting presumption, but that presumption can be rebutted by other indicia clearly manifesting a legislative intent to the contrary.[13] Under *Blockburger*, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[14] In the multiple punishments context, if the offenses have the same elements under *Blockburger*, then an analysis can occur under *Missouri v. Hunter*[15] to determine whether the Legislature nevertheless intended to allow multiple punishments.[16] Conversely, if the offenses have

---

[12] *Bigon*, 252 S.W.3d at 370; *Hall v. State*, 225 S.W.3d 524, 532-33 (Tex. Crim. App. 2007).

[13] *Littrell v. State*, 271 S.W.3d 273, 276 (Tex. Crim. App. 2008) (If one offense "is a lesser-included" of the other under *Blockburger*, "the judicial presumption is that they are the same for double-jeopardy purposes" and the "second question, in that event, is whether the Legislature has clearly expressed a contrary intention that the accused should in fact be punished for both the greater and the lesser-included offenses."); *id.* at 277 n.23 ("Of course, even when two statutorily defined offenses are clearly not the same under a *Blockburger* analysis, other considerations might make it clear that the Legislature nevertheless intended that an accused not be punished under both provisions.") (citing *Ervin* and *Bigon*). *See also Bigon*, 252 S.W.3d at 370 ("When multiple punishments arise out of one trial, the *Blockburger* test is the starting point in analyzing the two offenses."); *Ervin*, 991 S.W.2d at 804 ("[T]he *Blockburger* test cannot authorize two punishments where the legislature clearly intended only one."); *Gonzales v. State*, 304 S.W.3d 838, 845-46 (Tex. Crim. App. 2010) ("The traditional indicium of . . . legislative intent is the so-called 'same elements' test of *Blockburger*," but "even if a straightforward application of the *Blockburger* test would suggest that two offenses are not the 'same' for double jeopardy purposes," the offenses are nevertheless considered the same, "if other indicia manifest a legislative intent that an accused not be punished for both offenses") (citing *Ervin*).

[14] 284 U.S. at 304.

[15] 459 U.S. 359 (1983).

[16] *See id.*; *Ervin*, 991 S.W.2d at 807. A *Missouri v. Hunter* inquiry may not be allowed in the multiple prosecution context due to finality concerns. *See State v. Perez*, 947 S.W.2d 268, 270

different elements under *Blockburger*, then an analysis can occur under *Ervin* to determine whether the Legislature nevertheless intended the offenses to be treated as the same.[17] The *Hunter/Ervin* analysis is part of the elements aspect of Double Jeopardy law.[18] The allowable unit of prosecution prescribed for the offenses is a relevant consideration under an *Ervin* analysis,[19] but only in the abstract, in an effort to determine whether, under the law and the charging instrument, the offenses are considered to be the same elementally.

A units (or "allowable unit of prosecution") inquiry is separate, designed to determine whether a single legally-proscribed offense has been committed more than once.[20] A units inquiry can also be divided into two parts: (1) what the unit is,[21] and (2) whether the requisite number of units have been shown.[22] This inquiry involves determining such things as whether there were two

n.3 (Tex. Crim. App. 1997).

[17] *See Gonzales*, 304 S.W.3d at 845-46 (discussing *Ervin*). This analysis can occur in both the multiple prosecution and the multiple punishment contexts.

[18] *See Hall*, 225 S.W.3d at 533 n.39 (recognizing that *Hunter* involved a cognate pleadings analysis); *Bigon*, 252 S.W.3d at 372 (under an *Ervin* analysis, looking at charging instrument allegations to determine the underlying felony in felony murder prosecution); *Ervin*, 991 S.W.2d at 807 (recognizing "the inverse conclusion" from *Hunter*).

[19] *Bigon*, 252 S.W.3d at 371-72.

[20] *See Sanabria v. United States*, 437 U.S. 54, 69-70, 69 n.24 (1978); *Saenz v. State*, 166 S.W.3d 270, 272-74 (Tex. Crim. App. 2005).

[21] *See e.g. Vick v. State*, 991 S.W.2d 830, 832-34 (Tex. Crim. App. 1999) (penetration of anus and sexual organ different units in aggravated sexual assault); *Ex parte Hawkins*, 6 S.W.3d 554, 556 (Tex. Crim. App. 1999) (different victims are different units in a robbery); *Ex parte Cavazos*, 203 S.W.3d 333, 335-37 (Tex. Crim. App. 2006)(entry is the unit in a burglary).

[22] *Blockburger*, 284 U.S. at 303 (second drug sale was a separate offense because it "was not the result of the original impulse, but of a fresh one"); *Ex parte Goodbread*, 967 S.W.2d 859, 860-61 (Tex. Crim. App. 1998) (can have multiple prosecutions for different incidents of the same type of sexual assault).

murder victims, whether a victim who was assaulted on Monday was assaulted again on Tuesday, or whether multiple kinds of sex acts were committed against a victim. Evidence at trial can be considered in determining whether the requisite number of units has been shown.[23] A units inquiry might more commonly arise when a single statute is involved[24] and a court is trying to discern how to divide conduct (e.g., a sexual assault with multiple manners and means) into units.[25] Parsing a single statute "is unlike a situation involving different statutes, which, by itself, is some indication of legislative intent to authorize multiple prosecutions simply because the offenses are separately defined in different statutes."[26] So, while a determination that the elements are different under the *Blockburger* test sets up a presumption in a multiple-statute elements inquiry, no such presumption is created in a single-statute units inquiry.[27] Nevertheless, if offenses under different statutes are the

---

[23] *Blockburger*, 284 U.S. at 303; *Goodbread*, 967 S.W.2d at 860 ("For Double Jeopardy purposes, the same offense means the identical criminal act, not the same offense by name . . . . when one cannot determine from the State's pleadings whether the offenses prosecuted are the same, the court must look to the proof offered at trial.") (Citing and quoting favorably from *Luna v. State*, 493 S.W.2d 854 (Tex. Crim. App. 1973)); *id.* at 861 (We look to evidence at trial to determine what instances of conduct conforming to the indictment are jeopardy-barred.); *see also Quintano v. People*, 105 P.3d 585, 592, 595 (Colo. 2005) ("[W]hile we do not adopt any specific list of factors to determine whether the defendant's acts constitute factually distinct offenses, we look to all the evidence introduced at trial to determine whether the evidence on which the jury relied for conviction was sufficient to support distinct and separate offenses.").

[24] *See Bigon*, 252 S.W.3d at 371-72 ("Usually, analysis of an allowable unit of prosecution involves a situation in which two offenses from the same statutory section are charged.").

[25] *See Vick*, 991 S.W.2d 833, 833 n.1 (arriving at the same result under either the *Blockburger* test or an inquiry regarding the how to divide the offense into separate prosecutable acts).

[26] *Id.* at 832.

[27] *See Vineyard v. State*, 958 S.W.2d 834, 836 n.5 (Tex. Crim. App. 1998) ("We also note this Court has stated the *Blockburger* test is not 'precisely applicable' to cases like this where a defendant's conduct violates one statutory provision more than once.").

"same" elementally, then a units analysis would be appropriate if, for example, the pleadings or the evidence indicates that there are different victims.[28]

If the offenses of aggravated robbery and aggravated assault were defined within the same statute, then a units analysis might by itself be appropriate to resolve whether the offenses are the same. But aggravated robbery and aggravated assault are defined in different sections—indeed, different chapters—of the Penal Code. As explained above, the fact that the offenses involved are defined in different statutes is some indication that the Legislature intended multiple punishments. Even if we accept as true that appellant's units analysis is correct, it must first be established that the offenses are the same under an elements analysis. Because an elements analysis revolves solely around the charging instrument and the law, it is irrelevant that evidence at trial may show that the offenses involve the same act or very closely related acts. That the two statutes divide units in the same way (if they do) has some bearing on the elements analysis under *Ervin* but is not dispositive.

Appellant initially relies upon *Patterson v. State*, which held that, under the facts of the case, the offense of indecency with a child by exposure was incident to and subsumed by the immediately subsequent offense of sexual assault by penetration.[29] He argues that the "fear induced by [the victim's] perception of the gun is necessarily a part of the shooting in the same way that exposure is necessarily a part of penetration." But *Patterson* is distinguishable from this case for two reasons: First, *Patterson* was not decided on Double Jeopardy grounds.[30] And second, the offenses at issue

---

[28] *See Hawkins*, 6 S.W.3d at 557 n.8.

[29] 152 S.W.3d 88, 92 (Tex. Crim. App. 2004)(discussing interplay between TEX. PENAL CODE §§ 21.11(a)(2)(A) and 22.021(a)(1)(B)(i)).

[30] *Id.* at 90 (deciding the issue under a statute addressing the concurrent versus consecutive sentencing).

in *Patterson* were clearly the same elementally under the *Blockburger* test.[31]

Appellant also relies upon *Littrell v. State*, which held that the offenses of felony murder and aggravated robbery were the same when the aggravated robbery in question was the underlying felony for the felony murder.[32] Appellant contends that *Littrell* is similar to the present case because the indictment in *Littrell* also alleged two unique elements: (1) an "act clearly dangerous to human life" in connection with the murder, and (2) that "the victim was placed in fear of imminent bodily injury and death aggravated by the use and exhibition of a deadly weapon" in connection with the aggravated robbery. Appellant is mistaken. Aggravated robbery was wholly incorporated into the felony murder charge—resulting in the offenses being the same under the *Blockburger* test.[33]

Appellant further contends that *Hawkins* and *Cavazos* "underscore the importance of determining the allowable unit of prosecution as a key to resolving Double Jeopardy questions." Those cases both involved prosecutions under a single section of the Penal Code (robbery in *Hawkins* and burglary in *Cavazos*)[34] while the present case involves prosecution under two different sections. As discussed above, when a single statute is at issue, courts conduct only a units inquiry, but when two statutes are at issue, a units inquiry is only half the battle—the offenses must be the same by both elements and units for a Double Jeopardy violation to arise.

Finally, appellant relies upon *Bigon*, a case that held, under an *Ervin* analysis, that the

---

[31] *See id.* at 94, 94 n.3 (Hervey, J., concurring) (observing that indecency by exposure was a lesser included offense of aggravated sexual assault under *Blockburger*).

[32] 271 S.W.3d 276-79 (Tex. Crim. App. 2008).

[33] *Id.* at 276-77.

[34] *See Hawkins* and *Cavazos*, *supra*.

offenses of felony murder, intoxication manslaughter, and manslaughter (involving the same victim) were the "same" for Double Jeopardy purposes.[35] We observed in *Bigon* that intoxication manslaughter used to be contained in the same chapter as all of the homicide offenses and was framed as an alternative way to commit manslaughter.[36] We explained that we had previously suggested in *Ervin* that the move to Chapter 49 was largely for housekeeping purposes.[37] We also observed that intoxication manslaughter retained "manslaughter" in its title and was still considered a homicide offense.[38] We further explained that intoxication manslaughter and murder both had the same focus on the death of an individual, the offenses were both result-oriented, the allowable unit of prosecution—one offense per victim—was the same, and that where the underlying felony for felony murder was a DWI, "it is hard to fathom that the legislature intended for one drunk-driving accident to result in multiple homicide convictions for each victim."[39]

Homicide offenses have always been considered to be especially closely related. The Penal Code introduces the homicide chapter with a section that lists the types of homicides: "Criminal homicide is murder, capital murder, manslaughter, or criminally negligent homicide."[40] Before the 1994 amendments, this provision referred to "murder, capital murder, voluntary manslaughter,

---

[35]  252 S.W.3d at 368-72.

[36]  *Id.* at 371.

[37]  *Id.*; *see also Ervin*, 991 S.W.2d. at 816.

[38]  *Bigon*, 252 S.W.3d at 371.

[39]  *Id.* at 371-72.

[40]  TEX. PENAL CODE § 19.01(b).

involuntary manslaughter, or criminally negligent homicide"[41] and what is now intoxication manslaughter was one means of committing involuntary manslaughter.[42]

The offenses at issue in the present case are not as closely related. Aggravated assault and aggravated robbery have always been contained in separate chapters—not just separate sections—of the Penal Code. No statute asserts any relationship between the aggravated assault and aggravated robbery offenses or between their underlying offenses of assault and robbery.[43]

In his *pro se* petition for discretionary review, appellant claimed that "bodily injury" is an element of aggravated robbery, and that the jury charge "added to the confusion" when it failed to contain that element. Appellant's claim is not entirely correct because "bodily injury" is an alternative element rather than a necessary element,[44] but I will address the implication of his claim that the existence of common elements makes the offenses sufficiently closely related to be considered the same under *Ervin*.

The aggravated robbery and aggravated assault statutes contain a number of parallel elements. Both allow an underlying lesser offense to be aggravated by the use of a deadly weapon (the aggravating factor alleged in the indictment in this case) or by the infliction of serious bodily injury.[45] The underlying lesser offenses of assault and robbery both contain alternative manners and

---

[41] TEX. PENAL CODE § 19.01(b) (West 1992).

[42] *Id.*, § 19.05 (West 1992).

[43] *See* TEX. PENAL CODE, Chs. 22 & 29, *passim*.

[44] *See id.*, § 29.02.

[45] *Compare id.* § 22.02(a)(1), (2) *with id.*, § 29.03(a)(1), (2).

means involving "bodily injury" and a "threat."[46]  For the purpose of determining a lesser-included

offense under § 37.09 of the Code of Criminal Procedure, we have recognized that assault may or

may not be a lesser-included offense of robbery depending on which alternative manners and means

are alleged:

> For example, robbery may be committed either by causing bodily injury or by
> threatening imminent bodily injury.  Each of these forms of robbery includes, as a
> lesser offense, a form of assault that the other does not include.  An allegation of
> robbery by threat includes the lesser offense of assault by threat; it does not include
> the offense of assault by causing bodily injury.  Conversely, an allegation of robbery
> by causing bodily injury would include the lesser offense of assault by causing bodily
> injury, but it would not include the offense of assault by threats.[47]

Given *Ervin*, the law with respect to lesser-included offenses does not necessarily control the Double

Jeopardy question.  But the presence of parallel provisions in the two statutes is not enough to

convince me that the Legislature clearly intended to prohibit punishment for both aggravated assault

and aggravated robbery offenses when those offenses have different elements under *Blockburger*.

And, though the aggravated assault and aggravated robbery statutes contain parallel elements,

there is at least one substantial difference in the underlying assault and robbery statutes that relates

to the case hand.  The "threat" portion of the assault statute provides that a person commits an

offense if he "intentionally or knowingly threatens another with imminent bodily injury, *including

the person's spouse*."[48]  The counterpart provision in the robbery statute provides that a person

---

[46] *Compare id.* § 22.01(a)(1), (2) *with id.*, § 29.02(a)(1), (2).

[47] *Bell v. State*, 693 S.W.2d 434, 436 n.3 (Tex. Crim. App. 1985) (citation omitted, citing *Martinez v. State*, 599 S.W.2d 622, 624 (Tex. Crim. App. 1980) (in turn, citing *Mitchell v. State* 543 S.W.2d 637 (Tex. Crim. App. 1976) (holding that aggravated robbery by threat does not include aggravated assault by causing bodily injury)).

[48] Tex. Penal Code § 22.01(a)(2) (emphasis added).

commits an offense if he "intentionally or knowingly threatens *or places* another *in fear of* imminent bodily injury *or death*."[49] As can be seen, the robbery statute contains the phrase "places . . . in fear of" that is not contained in the assault statute. In *Williams v. State*, the First Court of Appeals indicated that this difference in language results in a significant difference in the meaning of the two statutes, because a threat is not actually required to establish robbery:

> We note that an element of the crime of robbery, "*places* another in fear of imminent bodily injury," TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 1989) (emphasis added), differs from an often compared, but vastly dissimilar element for the crime of assault, "*threatens* another with imminent bodily injury," TEX. PENAL CODE ANN. § 22.01(a)(2) (Vernon 1989) (emphasis added). The general, passive requirement that another be "placed in fear" cannot be equated with the specific, active requirement that the actor "threaten another with imminent bodily injury." Under the "placed in fear" language in section 29.02 of the Texas Penal Code, the factfinder may conclude that an individual fear or was "placed in fear," in circumstances where no actual threats were conveyed by the accused.[50]

In published opinions, the Third, Sixth, and Fourteenth courts of appeals have followed *Williams*.[51] In *Wilmeth v. State*, the Twelfth Court of Appeals indicated that "a menacing glance" could be sufficient to show that the defendant placed a victim in fear of imminent bodily injury.[52]

It is also true that the robbery statute does not contain the phrase "including the person's spouse" and the assault statute does not include the word "death," though it is unclear whether these differences in language create a substantive difference in the offenses. Nevertheless, they are

---

[49] *Id.*, § 29,02(a)(2) (emphasis added).

[50] 827 S.W.2d 614, 616 (Tex. App.–Houston [1ˢᵗ Dist.] 1992) (emphasis in original).

[51] *Welch v. State*, 880 S.W.2d 225, 227 (Tex. App.–Austin 1994); *Howard v. State*, 306 S.W.3d 407, 410-11 (Tex. App.–Texarkana 2010); *Burton v. State*, 230 S.W.3d 846, 852 (Tex. App.–Houston [14ᵗʰ Dist. 2007).

[52] 808 S.W.2d 703, 706 (Tex. App.–Tyler 1991).

differences that undermine the notion that the Legislature indicated an intent that the offenses be

treated the same by setting them up with parallel provisions.[53]

      With these comments, I join the Court's opinion.

Filed: June 29, 2011
Do not publish

---

[53] Even if one viewed the phrase "threatens or places another in fear of imminent bodily injury or death" as involving alternate manners and means ("threatens" vs. "places"), and one viewed the parallel nature of the  "threatens" manner and means as sufficient to create a double jeopardy problem, then one would have to conclude that appellant forfeited error under *Gonzalez*, 8 S.W.3d 640, because the jury charge included both the "threatens" and "places" manner and means, appellant failed to object, and we do not know which manner and means the jury rested its verdict upon. Given my resolution of the question, however, I need not address appellant's claim that *Gonzalez* should be overruled.