PD-925-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/22/2015 2:06:20 PM
Accepted 7/24/2015 9:32:21 AM
ABEL ACOSTA
CLERK

# IN THE COURT OF CRIMINAL APPEALS
## FOR THE STATE OF TEXAS

DALTON JAMES BENNETT, JR
    AIK/A DALtON JAMES BENNETT
    APPELLANT

V.

                COA NO. 08-13-00138-CR
                TRIAL COURT N0.1244131D

THE STATE OF 1'EXAS,
    APPELLEE

APPEALED: FROM CAUSE NUMBER 1244131D, IN THE DISTRICT COURT NUMBEJt 372, TARRANT COUNTY, TEXAS; THE HONORABLE SOOTT WISCH, JUDGE PRESIDING.

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

WILLIAM H. "BILL" RAY
TEXAS BAR CARD N0.16608700
ATTORNEY FOR APPELLANT

LAW OFFICE OF WILLIAM H. "BILL" RAY, P.C.
512 MAIN STREET, STE. 308
FORT WORTH, TEXAS 76102
(817) 698-9090
(817) 698-9092, FAX
bill@billraylawyer.com

FILED IN
COURT OF CRIMINAL APPEALS

July 24, 2015

***ORAL ARGUMENT IS NOT REQUESTED**

ABEL ACOSTA, CLERK

## U>ENTITY OF PARTIES AND COUNSEL

DALTON JAMES BENNETT, JR.        APPELLANT
    c\o Texas Dept. of Criminal
    Justice, InstitUtional
    Division, Huntsville, Texas

HONORABLE WILLIAM H. RAY        ATTORNEY FOR APPELLANT
    512 Main Street, Ste. 308        AT TRIAL AND ON APPEAL
    Ft. Worth, Texas 76102

HONORABLE SHAREN WILSON        CRIMINAL DISTRICT ATTORNEY
    401 W. Belknap St.        TARRANT COUNTY, TEXAS
    Ft. Worth, Tx. 76196-0201

HONORABLE CHUCK MALLIN        CHIEF, APPELLATE DIVISION,
    401 W. Belknap St.        TARRANT COUNTY DISTRICT
    Ft. Worth, Tx'. 76196-0201        ATTORNEY'S OFFICE

HONORABLE SEA.N COLSTON        ASSISTANT CRIMINAL DISTRICT
    401 W. Belknap St.        ATTORNEY, TARRANT COUNTY,
    Ft. Worth, Tx. 76196-0201        TEXAS

HONORABLESA LPARHAM        ASSISTANT CRIMINAL DISTRICT
    401 W. Belknap St.        ATTORNEY,TARRANTCOUNTY
    Ft. Worth, Tx. 76196-0201        TEXAS

HONORABLE SCOTT WISCH        JUDGE, DISTRICT COURT
    401 W. Bella)ap St.        NUMBER372
    Ft. Worth, Texas 76196        TARRANT COUNTY, TEXAS

HONORABLE LISA McMINN        STATE PROSECUTING
    P.O. Box 13046        ATTORNEY
    Austin, Texas 78711

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL      2

INDEX OF AUTHORITIES      5

STATEMENT CONCERNING ORAL ARGUMENT      7

STATEMENT OF THE CASE      7

STATEMENT OF THE PROCEDURAL HISTORY      8

GROUNDS FOR REVIEW

     GROUND FOR REVIEW NUMBER ONE      9

     THE TRIAL COURT ERRED BY REFUSING TO GRANT
     APPELLANT'S MOTION TO QUASH THE INDICTMENT,
     WHICH VIOLATED APPELLANT'S CONSTITUTIONAL
     RIGHT AGA:INST DOUBLE JEOPARDY

     GROUND FOR REVIEW NUMBER TWO      12

     THE TRIAL COURT'S DENIAL OF APPELLANT'S
     MOTION TO QUASH ERRONEOUSLY ALLOWED THE
     JURY TO FIND APPELLANT GUILTY OF CAPITAL
     MURDER ON LESS THAN A UNANIMOUS VERDICT

     GROUND FOR REVIEW NUMBER THREE      17

     THE TRIAL COURT ERRED BY ALLOWING TESTIMONY
     OF THE MEDICAL EXAMINER CONCERNING THE CAUSE
     OF DEATH AND CLASSIFICATION AS A HOMICIDE, WHEN THE
     MEDICAL EXAMINER DID NOT PERFORM THE AUTOPSY
     AND HAD NO PERSONAL KNOWLEDGE OF SAME.

PRAYER                                    23

CERTIFICATE OF SERVICE                    24

CERTIFICATE OF COMPLIANCE                  25

# INDEX OF AUTHORITIES

Cases  Page

*Boutang v. State, 402 S.W.3d 782 (Tex.App.-San Antonio 2013,*  *19*
  *pet.rejd.)*

*Bullcoming v. New Mexico,_ u.s._, 131 S.Ct. 2705, 180 L.Ed.2d 610*  *20*
  *(June 23, 2011)*

*Crawford v. Washington, 541 U.S. 36, 124 S.Ct 1354,*  *17*
  *158 L.Ed.2d 177 (2004)*

*Davis vs. Washingt(Jn, 547 U.S. 813,26 S.Ct. 2266,*  *18*
  *615 L.Ed2d 224 (2006)*

*Dowdell v. United States, 221 U.S. 325, 31 S.Ct. 590, 55 L.Ed. 753 (1911)* *19*

*Ex Parte Denton, 399 S.W.3d 540, 545 (Tex.Crim.App. 2013)*  *10*

*Hammon v. Jndian(l, 547 U.S. 813, 26 S.Ct. 2266, 615 L.Ed2d 224 (2006)* *18*

*Landrian v. State, 268 S.W.3d 532, 535-36 (Tex.Crim.App. 2008)*  *13*

*Martinez v. State, 225 S.W.3d 550, 554 (Tex.Crim.App. 2007)*  *13*

*Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527,*  *18*
  *174 L.Ed.2d 314 (2009)*

*Ngo v. State, 175 S W.3d 738, at 745 (Tex.Crim.App. 2005)*  *13*

*Pointer v. Texas, 30 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)* *17*

*Saenz v. State, 131 S.W.3d 43 (Tex.App.-San Antonio 2003)*  *9*

*Saenz v. State, 166.S.W.3d 270, at 274 (Tex.Crim.App. 2005)*  *10*

*Schad v. Arizona, 501 U.S. 624, 631-32 (1991)*  *13*

*U.S. vs. Ignasiak, 667 F.3d 1217, at 1230 (JP" Cir.2012)*       *20*

*Wood v. State, 299 S.W.3d 200,209-210 (Tex.App.-Austin, 2009, pet ref'd)*       *19*

*Woodall v. State, 336 S.W.3d 634 (Tex.Crim.App. 2011)*       *17*

Statutes

*Texas Const. Art. V, Sec. 13; Tex. Code Crim. Proc. Art. 36.29(a)*       *12*

*United States Constitution, Fifth Amendment*       *10*

*United States Constitution, Sixth Amendment*       *17*

*United States Constitution, Fourteenth Amendment*       *17*

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary in this case.

## STATEMENT OF THE CASE

This is an appeal from a felony conviction and sentence for the offense of Capital Murder. Appellant was charged by indictment with the offense of Capital Murder. CR, Pages. 9-10.

The jury found Appellant guilty as charged in the indictment. CR, Pages 277-279; RR-7, Pages 62-66. Specifically, the jury found that Appellant was guilty of capital murder, as alleged in paragraph two of the indictment. (Sealed clerk's items, court"s charge Page 11). The trial court assessed a punishment of Life in the Institutional Division of the Texas Department of Criminal Justice. CR, Pages 277-279; RR-7, Pages 62-66.

On direct appeal, the Court of Appeals for the Eighth Appellate District affirmed Appellant's conviction. The opinion was designated for publication.

## STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

Appellant was sentenced on April 5, 2013. Notice of Appeal was timely filed. Appellant timely filed his brief in the Court of Appeals on December 23, 2013. The State timely filed its brief on March 10, 2014.

The case was submitted to the Eighth Court of Appeals, in El Paso, without oral argument, on January 29, 2015. The Court of Appeals affirmed Appellant's conviction on June 30, 2015. That opinion is not designated for publication.

This Petition for Discretionary Review is timely filed.

GROUND FOR REVIEW NUMBER ONE

THE TRIAL COURT ERRED BY REFUSING TO GRANT
APPELLANT'S MOTION TO QUASH THE INDICTMENT,
WHICH VIOLATED APPELLANT'S CONSTITUTIONAL
RIGHT AGAINST DOUBLE JEOPARDY

Appellant's Motion to Quash complained of the process of proceeding with a three paragraph indictment, charging three separate ways, by alternating victims' names, to commit capital murder with the same three victims. CR, Pages 212-215. Appellant urged this matter numerous times, and the trial court overruled Appellant's request each time it was made. RR-2, Pages 5-11; RR-4, Pages 6-14; RR-4, Pages 67-70; and RR-7, Page 20. The jury found that Appellant had committed capital murder as alleged in paragraph two of the indictment. (Sealed clerk's items, courtls charge Page 11)

In *Saenz v. Srate, 131 S.W.3d 43 (Tex.App.-San Antonio 2003),* the Appellant was charged with three violations of the same statute, capital murder. The San Antonio Court of Appeals held that a multiple victim capital murder case was only one allowable unit of prosecution, hence only one conviction was allowable for double jeopardy purposes. *Id, 131 S.W.3d, at 53.* While the remedy was to vacate two of the convictions in *Saenz, supra,* Appellant submits that the trial should not have started the trial at all with the indictment Appellant was tried

on. In *Saenz, supra,* the Appellant made no objection prior to trial. In the present case, Appellant objected extensively to the process of trying him for several allegations, even when the end result was to allow only one verdict.

On the State's Petition for Discretionary Review in *Saenz, supra,* this Court affirmed the San Antonio Court of Appeals and held "the *Double Jeopardy Clause of the Fifth Amendment* was violated when the State charged [emphasis added] appellant with three separate counts of capital murder under *Sections 19.03 (a)(7)(A)* because the charges rely on the same three murders for each charge." *Saenz v. State, 166 S.W.3d 270, at 274 (Tex.Crim.App. 2005)*

The Court of Appeals held that since there was only one count, and Appellant was only charged, but not yet convicted, Appellant's double jeopardy clause had no application. Opinion, at pages 8-9. The double jeopardy clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3), multiple punishments for the same offense. *Ex Parte Denton, 399 S.W.3d 540, 545 (Tex.Crim.App. 2013).* Appellant submits that the operative word in this holding is charged, and therefore, the third prong above is implicated when a multiple punishment proceeding is initiated. Appellant submits that multiple punishment possibilities in a trial should be remedied before the trial, and a motion to quash is

the proper remedy to preserve error in an indictment which alleges multiple prosecutions, as in this case. Appellant should not be required to wait and see what he is convicted of and how before having a remedy.

For these reasons, Appellant submits that his Motion to Quash should have been granted, and to proceed on the indictment as filed, violated Appellant's constitutional protections of double jeopardy, and this Court should reverse Appellant's conviction and remand the case for a new trial.

## QROUND FOR REVIEW NUMBER TWO

## THE TRIAL COURT'S DENIAL OF APPELLANT'S MOTION TO QUASH ERRONEOUSLY ALLOWED THE JURY TO FIND APPELLANT GUILTY OF CAPITAL MURDER ON LESS THAN A UNANIMOUS VERDICT

Appellant's Motion to Quash pointed out with particularity that if the trial proceeded on the indictment as written, which alleged capital murder in three different paragraphs with the same three persons interchanged, and if the jury was instructed on and followed the law relating to paragraphs, the jury would be able to convict Appellant on less than a unanimous verdict because unanimity would not be required in each respective paragraph. CR, Pages 212-215.

Specifically, by charging in multiple paragraphs, the jury would not be required to reach a unanimous verdict for each paragraph, rather, each individual juror must only believe the State has met its burden of proof as to one of the different paragraph$, while other jurors could be satisfied with the proof in a separate paragraph. Hence, a non unanimous verdict.

Appellant made a motion for instructed verdict at the conclusion of the State's evidence, which included the points relied on in his Motion to Quash, which was denied. RR-7, Pages 5-6. A jury in a criminal case must reach a unanimous verdict. *Tex. Const. Art. V, Sec. 13; Tex. Code Crim. Proc. Art.*

36.29(a); *Landrian v. State, 268 S.W.3d 532, 535-36 (Tex.Crim.App. 2008).* The jury must agree thatthe defendant committed "the same, single, specific criminal act, " but need not uhanimously find that the defendant committed that crime by one specific manner or means. *Ngo v. State, 175 S.W.3d 738, at 745 (Tex.Crim.App. 2005); Schad v. Arizona, 501 U.S. 624, 631-32 (1991).* The phrase "manner or means" describes how the defendant committed the specific criminal act, which is the actus reus. *Ngo, 175 S.W.3d at 745-46; Schad, 501 U.S. at 630* (noting that the act of "murder" was the actus reus of the offense, and whether it was premeditated or committed during the course of robbery described "how" the murder was committed). The State is pennitted to plead alternate "manner and means" of committing the same offense. *Landrian, 268 S.W.3d at 535; Martinez v. State, 225 S.W.3d 550, 554 (Tex.Crim.App. 2007)* (State is required to set out each separate offense in a separate count, but may allege different methods of committing the same offense in separate paragraphs within a single count).

Essentially, the State may allege different theories in multiple paragraphs in a count, which what was done in the present case. However, the paragraphs in the indictment in this case did not differ by manner and means, rather, they differed only by victims' names, which are the forbidden conduct, and must be proven

beyond a reasonable doubt. Therefore, the indictment alleged and the trial court's charge allowed proof on less than beyond a reasonable doubt of any specific paragraph. Given the jury's verdict, paragraph two, and the corresponding instruction in the trial court's charge that specifically directed the jury to not go to paragraph two unless the jury had found Appellant not guilty of paragraph one of the indictment (CR, Page 266), Appellant submits that the court's charge allowed a conviction on less than a unanimous verdict of paragraph.

To have even considered paragraph two, the jury would have found Appellant not guilty of paragraph one, which alleged that Appellant had killed Sheryl Bennett and Jose Reyes. Paragraph two alleged that Appellant had killed Sheryl Bennett and Tana Todd, and if the jury correctly followed the trial court's instructions, Appellant would have been found not guilty of the murder of Sheryl Bennett, and could not have been found guilty of her murder in the subsequent paragraph.

Appellant renewed his Motion to Quash at the charge conference, and specifically objected to the trial court's charge that allowed a not guilty on paragraph one, and then a reconsideration of the same allegations in subsequent paragraphs, not only allowing for double jeopardy problems, but also the possibility of a conviction on less than a unanimous verdict. The trial court

overruled this contention. RR-7, Pages 15-23. Additionally, the trial court overruled Appellanfs request for the State to elect which paragraph it sought for a conviction. RR-7, Page 23.

For all these reasons, Appellant submits that the trial court's charge was erroneous, and Appellanfs Motion to Quash properly brought this perceived error to the trial comi's attention, which it erroneously denied.

The Court of Appeals noted that the trial court's instructions directed the jury to not consider, paragraph two unless it did not find the allegations of paragraph one to be true beyond a reasonable doubt. Opinion, at pages 10-16. That is exactly what happened. The problem is that the jury verdict did not distinguish which pari of paragraph one was not proven beyond a reasonable doubt. It could have just as easily been the murder of Jose Reyes as it could have been Sheryl Bennett, and there is no indication. If it was Sheryl Bennett, then the jury could not have found paragraph two true beyond a reasonable doubt.

Contrary to the Court of Appeals finding that a jury's determination of insufficient evidence of paragraph one was just an alternate theory or prosecution and the jury could then consider the second paragraph was a proper process, Appellant submits that this process is exactly his complaint, i.e., allowing the jury

to find sufficient evidence of capital murder without a unanimous verdict on who was intentionally murdered.

Appellant requests that this Court reverse his conviction and enter an acquittal, or alternatively, remand the case for a new trial.

GROUND FOR REVIEW NUMBER THREE

THE TRIAL COURT ERRED BY ALLOWING TESTIMONY
OF THE MEDICAL EXAMINER CONCERNING THE CAUSE OF
DEATH AND CLASSIFICATION AS A HOMICIDE, WHEN THE
MEDICAL EXAMINER DID NOT PERFORM THE AUTOPSY AND
HAD NO PERSONAL KNOWLEDGE OF SAME.

The *Confrontation Clause of the Sixth Amendment* provides that" [i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." *U.S. Constitution, Sixth Amendment.* This constitutional guarantee applies to both federal and state criminal prosecutions. *U.S. Constitution, Fourteenth Amendment, Pointer v. Texas, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L Ed.2d 923 (1965).* The essential purpose of the Confrontation Clause is to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. *Woodall v. State, 336 S.W.3d 634 (Tex.Crim.App. 2011).*

In *Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177*

*(2004),* the United States Supreme Court restored the Confrontation Clause's procedural guarantee against the government's presentation of unsubstantiated and ex parte testimony. *Crawford, supra,* held the Confrontation Clause bars the admission of testimony statements of a witness who did not appear at trial, unless that witness was unavailable to testify and the defendant had a prior opportunity for cross examination. In *Davis vs. Washington, 547 U.S. 813, 26 S.Ct. 2266, 615 L.Ed2d 224 (2006),* the Supreme Court offered some guidance in the definition of testimonial, holding that a 911 call made at the time of an assault was non testimonial. The reasoning was that a 911 call was not initiated to establish or prove past facts, but to describe current circumstances and allow police to render assistance. In *Hammon v. Indiana, 547 U.S. 813, 26 S.Ct. 2266, 615 L.Ed2d 224 (2006)* decided in the same opinion with Davis, supra, the Supreme Court, held that when there was no pending emergency in progress, the statements were more testimonial in nature, and the constitution required that the witness actually testify. In *Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009),* the Supreme Court held a certificate of drug analysis created for use in a criminal prosecution was testimonial in nature and could not be admitted into evidence absent the declarant who certified the result. */d. at 310-11, 129 S.Ct. 2527.* Despite this holding, the majority also suggested that routine maintenance

records might not be testimonial. See *id. at 311 n. 1, 129 S.Ct. 2527*

Additionally, documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records." ). Consistent with its observation in footnote one, the majority reasoned the certificate of analysis was testimonial because it " prov[ed] one fact necessary for [Melendez-Diaz's] conviction-that the substance he possessed was cocaine." *Id. at 313, 129 S.Ct. 2527.* Similarly, the majority distinguished the certificates of analysis from other cases where records were admitted for a purpose other than showing the defendant's guilt or innocence. */d. at 323 n. 8, 129 S.Ct. 2527 (citing Dowdell v. United States, 221 U.S. 325, 31 S.Ct. 590, 55 L.Ed. 753 (1911)); see also Dowdell, 221 U.S. at 330, 31 S.Ct. 590* ("Documentary evidence to establish collateral facts, admissible under the common law, may be admitted in evidence." ).

Appellant submits that testimony of the process and conclusions in an autopsy are not maintenance records. See *Boutang v. State, 402 S.W.3d 782 (Tex.App.-San Antonio 2013, pet.rej'd.).* Although not always the case, an autopsy is testimonial when the circumstances surrounding death warranted the police in the suspicion that the death was a homicide. *Wood v. State, 299 S.W.3d 200,209-210 (Tex.App.-Austin, 2009, pet ref' d).*

Appellant submits that to simply allow an expert who did not examine the evidence or have personal knowledge of the evidence be allowed to make the conclusions to simply read the report and then state his opinions eviscerates Crawford and its progeny.

In *U.S. vs. Ignasiak, 667 F.3d 1217, at1230 (11th Cir.2012)*, the Eleventh Circuit vacated the decision of the district court that allowed a surrogate to testify about the forensic evidence, as opposed to the actual scientist who performed the testing. The Ignasiak court held that the scientific nature of forensic reports does not justify subjecting them to lesser scrutiny than other testimonial evidence. In *Bullcoming v. New Mexico,_ U.S._, 131 S.Ct. 2705,180 L.Ed.2d 610 (June 23, 2011)*, the Court made clear that the Sixth Amendment requires that, when introducing testimonial forensic evidence, the prosecution must present testimony by a scientist who was actually involved in preparing that forensic evidence. */d. at 2710,2713*. In so doing, the Supreme Court specifically rejected the use of so-called" surrogate testimony," which in Bullcoming was that of a colleague from the same lab that prepared the disputed forensic report, but who had not specifically worked on the reports in question. */d. at 2710, 2712-13*. Even though the colleague was able to testify as to the efficacy and reliability of the laboratory equipment, and also whether normal protocol was followed, the Court explained

that the " comparative reliability of an analyst's testimonial report drawn from machine-produced data does not overcome the Sixth Amendment bar ... [because] the obvious reliability of a testimonial statement does not dispense with the Confrontation Clause." *Id. at 2714.* Instead, only testimony by the actual scientist who prepared the forensic report could provide insight into "the particular test and testing process ... employed," and also " expose any lapses or lies on the certifying analyst's part." Id.

In the present case, the trial court erred by allowing the testimony of Dr. White concerning the autopsy of Jose Reyes. Appellant submits that Dr. White knew nothing about the autopsy of Jose Reyes, which was shown by White's lame attempt tore characterize his observations to circumvent the rule after he testified he had no personal knowledge of Reyes' autopsy. RR-6, Pages 181-190. Although the jury ultimately found that Appellant guilty of a paragraph that did not allege Appellant caused the death of Jose Reyes, the damage of the testimony was done. The trial court should not have allowed the tainted testimony.

The Court of Appeals held that since the jury did not find that Appellant had killed Jose Reyes, there was no error of a lack of confrontation in the jury's verdict. Opinion, at page 16.

Appellant submits that the finding of insufficiency in paragraph one, which

gives rise to the verdict in paragraph two supports Appellant's contention that a finding of acquittal in paragraph one, per the trial court's instructions, would bar consideration of the second and third paragraphs. The trial court's instructions allowance of testimony about the autopsy of Jose Reyes based on the lack of confrontation gave rise to the verdict of guilty in paragraph two. Thus, Appellant's confrontation objection, which was overruled, created the non unanimous verdict of paragraph two.

If this Court does not sustain Appellant's contention and enter an order of acquittal in paragraph two, Appellant submits that this point of error should be sustained and an order for a new trial be ordered pursuant to point of error number three.

For these rea$ons, Appellant submits that this Court reverse his conviction and remand the case for a new trial.

## PRAYER FOR RELIEF

Appellant Prays that this Honorable Court reverse his conviction and enter a judgment of acquittal, or alternatively, remand the case for a new trial.

RESPECTFULLY SUBMITTED,

/S/ WILLIAM H. "BILL" RAY
WILLIAM H. "BILL" RAY
TEXAS BAR CARD NO. 16608700
ATTORNEY FOR APPELLANT

LAW OFFICE OF WILLIAM H. "BILL" RAY, P.C.
512 MAIN STREET, STE. 308
FORT WORTH, TEXAS 76102
(817) 698-9090
(817) 698-9092, FAX

## CERTIFICATE OF SERVICE

I certify that a true copy of Appellant's Petition for Discretionary Review was delivered via the electronic filing system to the office of Sharen Wilson, Criminal District Attorney, Criminal District Attorney of Tanant County, Texas, 401 W. Belknap St. Ft. Worth, Tx. 76196-0201 on the date ofthis document's filing.

I certify that a true copy of Appellant's Petition for Discretionary Review was placed in the United States Mail addressed to Appellant, in the Texas Department of Conections, on the date of this document's filing.

I certify that a true copy of Appellant's Petition for Discretionary Review was delivered via the electronic filing system to the State's Prosecuting Attorney, at P.O. Box 13046, on the date of this document's filing.

/S/ WILLIAM H. "BILL" RAY

WILLIAM H. "BILL" RAY

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4 i3, of the Texas Rules of Appellate Procedure, I certify that this Petition fmDiscretionary Review filed in this case, has 3867 words contained therein. This count was obtained via the WordPerfect computer program.

/S/ WILLIAM H. "BILL" RAY

WILLIAM H. "BILL" RAY



COURT OF APPEALS EIGHTH
DISTRICT OF TEXAS EL
PASO, TEXAS

DALTON JAMES BENNETT, JR. *AIKJA*        §
DALTON JAMES BENNETT,                                    No. 08-13-00138-CR

                                                  §

          Appellant,                                          Appeal from the

                                                  §

v.                                                            372nd District Court

                                                  §

THE STATE OF TEXAS,                                  ofTarrant County, Texas

                                                  §

          Appellee.                                           (TC# 1244131D)

## JUDGMENT

The Court has considered this cause on the record and concludes the judgment of conviction should be modified to reflect that the trial court assessed the punishment in Appellant's case. We therefore affirm the judgment of the trial court as modified. This decision shall be certified below for observance.

IT IS SO ORDERED THIS 30TH DAY OF JUNE, 2015.

STEVEN L. HUGHES, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.



COURT OF APPEALS EIGHTH
DISTRICT OF TEXAS EL
PASO, TEXAS

| DALTON JAMES BENNETT, JR. A/KIA | § | |
| DALTON JAMES BENNETT, | | No. 08-13-00138-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | 372nd District Court |
| | § | |
| THE STATE OF TEXAS, | | ofTarrant County, Texas |
| | § | |
| Appellee. | | (TC# 1244131D) |

## OPINION

Appellant Dalton James Bennett was found guilty by a jury of one count of capital murder of his wife and his sister-in-law, and received an automatic life sentence. On appeal, Appellant contends the trial court violated his right to be free from double jeopardy, his right to a unanimous verdict, and his Sixth Amendment right to confront witnesses. We conclude Appellant's rights were not violated and affirm the trial court's judgment.[1]

## FACTUAL BACKGROUND

Appellant separated from his wife, Sheryl Bennett, approximately six months before the killings that formed the basis of his capital murder conviction. Appellant and Sheryl had a

---

[1] This case was transferred from our sister court in Fort Worth, and we decide it in accordance with the precedent of that Court to the extent required by TEX. R. APP. P. 41.3.

somewhat rocky relationship. While separated, Sheryl became involved with Jose Reyes, and the two began living together in Sheryl's apartment on a part-time basis. According to friends, Appellant appeared to be upset about his wife's new relationship and believed she was "cheating" on him. Approximately two weeks before the killings, Appellant met with a mutual friend, advised her that he was upset with Sheryl because of her new relationship, and stated: "You don't know how bad I want to give her an extra hole to breathe out of."

Around 10:30 p.m. the night before the killings, Sheryl and Jose walked from her apartment to a nearby bar, along with Sheryl's brother, Johnny Todd, and Johnny's wife, Tana Todd, who lived in the apartment adjacent to Sheryl. Sheryl's brother, James Todd, remained at the apartment to babysit Sheryl's five children, as well as Johnny and Tana's three children.

Appellant arrived at the same bar to meet mutual friends. When Appellant learned that Sheryl was at the bar with Jose, he advised his friends he intended to leave because of their presence. After Appellant left the bar, he exchanged several negative text messages with both Sheryl and his sister-in-law Tana in the hours leading up to the killings.

Sheryl, Tana, Jose, and Johnny left the bar together, arriving back at Sheryl's apartment at approximately 12:30 a.m. The four of them went into Sheryl's bedroom located in the back of the apartment, and began drinking "Jager shots," while at least three of their children were in the living room playing video games.

Shortly thereafter, Appellant walked into the apartment through an unlocked door and entered Sheryl's bedroom. According to Johnny Todd, who survived the shootings, when Appellant walked in, he told Sheryl, "Here's your divorce," and proceeded to shoot Sheryl in the arm. Immediately thereafter, Appellant shot Johnny Todd in the neck, causing him to collapse to

2

the ground. Johnny Todd recalled that Appellant also shot his wife, Tana, at the same time, causing her to fall to the ground as well. Johnny Todd testified that he recalled hearing three or four additional shots after he and Tana were shot.

Although unable to move for several minutes, Johnny was eventually able to check on the other victims. He determined they were all dead and then went next door to his apartment to call 911. During that call, Johnny identified Appellant as the shooter to the 911 operator.

Sheryl's son, Jason Todd, who was ten years old at the time of the shootings, testified that he was in the living room of Sheryl's apartment playing a video game when he heard someone enter the apartment and walk into his mother's bedroom. Jason thereafter heard at least two gunshots and then saw.* Appellant leave his mother's bedroom with a gun in his hand. After entering the bedroom and seeing the three bodies on the floor, Jason ran to the apartment next door and told his uncle. James Todd, to call 911. At that same time, Jason observed his other uncle, Johnny Todd, bleeding from a hole in his neck and trying to call 911 as well.

When Arlington police officers arrived at the scene, they determined that Sheryl, Tana, and Jose had been shot, and showed no signs of life. Upon learning from witnesses that Appellant was a suspect in the killings, police officers were dispatched to Appellant's horne, where they found Appellant in the garage bleeding from apparently self-inflicted wounds, unresponsive to their verbal commands. It appeared to the officers that Appellant had cut himself on the arms and neck with a box cutter that was found nearby on the garage floor. The officers also found a possible suicide note on a desk in Appellant's bedroom, in which Appellant apologized to his mother and son, saying he could not "handle the pain anymore" and that he could not "let her get away with this."

3

The officers found a Llama .45 caliber, semi-automatic handgun and holster under Appellant's bed. as well as a gun box with "two empty magazines" in a nearby closet. The police later tested bullets and .45 auto-caliber shell casings found at the crime scene, and concluded they were all fired from the .45 Llama gun found at Appellant's residence.

Immediately after the shootings, Appellant was transported to the hospital for treatment for his wounds, but was reLeased shortly thereafter and taken to the jail where detectives interviewed him. After waiving his rights and voluntarily agreeing to speak to the detectives, Appellant made a full recorded confession, admitting that he had shot all four victims in Sheryl's apartment. During this interview, Appellant advised detectives that he would have shot himself after the killings, but he had no bullets left.

At trial, Dr. Lloyd White, a physician contracted with the Tarrant County Medical Examiner's Office, testified that he personally conducted an autopsy on Tana Todd's body, and concluded that she had died from a gunshot wound that went through her head and brain, exiting through the other side. Dr. White further concluded that the shot was fired just a few inches from Tana's head, causing her instantaneous death, and that Tana's death was a homicide.

Dr. White testified that he also personally performed an autopsy on Sheryl's body and concluded that Sheryl suffered three gunshot wounds to her shoulder, eye, and collarbone area, all of which went through her body. According to Dr. White, shots were fired a few inches away from Sheryl's body, but the only fatal wound was the one in her collarbone area. Dr. White concluded that Sheryl'$ death was a homicide.

Dr. White, however, did not perform the autopsy on Jose Reyes' body, and the doctor who performed the autopsy, Dr. Gary Sisler, had retired prior to trial and was not called as a witness.

4

Over Appellant's continuing objection, Dr. White was allowed to testify that he had reviewed Dr. Sisler's autopsy report and medical file, and on that basis had formed an opinion that the cause of Jose's death was a homicide, resulting from a "perforating gunshot wound of the head and brain." The jury found Appellant guilty of capital murder, expressly finding that Appellant had intentionally killed Sh(tryl Bennett and Tana Todd in a single criminal transaction. The trial court imposed an automatic life sentence as required by statute.

## DISCUSSION

### The Trial Court's Denial of the Motion to Quash the Indictment

In his first two issues, Appellant contends that the trial court erred when it denied his motion to quash the indictment, contending that the indictment violated both his right to be free from double jeopardy a,nd his right to a unanimous verdict.

*Background*

The indictment charged Appellant with a single count of capital murder, based on the theory that he had intentionally killed multiple victims in a single transaction in violation of TEX.PENAL CODE ANN.§ 19.03(a)(7)(A) (West Supp. 2014).[2] However, the indictment contained three separate paragraphs, each setting forth an alternative theory of prosecution. The first paragraph alleged Appellant had intentionally caused the death of Sheryl Bennett and Jose Reyes in the same transaction; the second paragraph alleged Appellant had intentionally caused the death of Sheryl Bennett and Tana Todd in the same transaction; and the third paragraph alleged Appellant had intentionally caused the death of Tana Todd and Jose Reyes in the same transaction.

Appellant filed a pretrial motion to quash the indictment, contending the indictment in

---

[2] TEX.PENAL CODE ANN. § 19.03(a) provides that an individual commits the offense of capital murder if "(7) the person murders more than one person: (A) during the same criminal transaction ...."

5

effect accused him of committing three separate capital murder offenses involving the same three victims, and that he therefore faced the possibility of being convicted of three separate capital murder charges in violation of his double jeopardy rights. Appellant also argued that the indictment improperly raised the possibility that a jury could reach a non-unanimous verdict, as some jurors could base a guilty verdict on a finding that Appellant had killed Sheryl Bennett and Jose Reyes in a single transaction; while others could base their verdict on a finding that he had killed Sheryl Bennett and Tana Todd in a single transaction; while yet others could base their verdict on a finding that he had killed Tana Todd and Jose Reyes in a single transaction.

At a pretrial hearing, another judge sitting in place of the trial court denied the motion to quash. Appellant thereafter renewed his motion at various times during the trial, but the trial court denied his motion on each occasion.

*Standard of Review*

The standard of review for assessing a trial court's ruling on a motion to quash turns on which judicial actor is in the best position to determine the issue in controversy. *See Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Crim.App. 1997). Questions of law- such as the sufficiency of an indictment- are reviewed de novo because neither the trial court nor the reviewing court occupies an appreciably better position than the other to decide the issue. *See State v. Moff,* 154 S.W.3d 599,601 (Tex.Crim.App. 2004); *Guzman,* 955 S.W.2d at 89; *Ahmadv. State,* 295 S.W.3d 731,739 (Tex.App. -Fort Worth 2009, pet. refd) (op. on reh'g). Appellant is challenging the legal sufficiency of the indictment, and we therefore review Appellant's challenges to the indictment de novo.

*Appellant's Double Jeopardy Rights were not Violated*

6

In Issue One, Appellant contends the trial court's failure to quash the indictment violated his double jeopardy rights, as it potentially subjected Appellant to three separate convictions for capital murder when only one such conviction was permissible. In support of his argument, Appellant relies almost exclusively on *Saenz v. State.* 166 S.W.3d 270 (Tex.Crim.App. 2005). In *Saenz,* the defendant was charged with capital murder in a three-count indictment involving three murders alleged to have occurred in a single criminal transaction. Each count alleged the murder of a different victim. and each count alleged the murder of two other victims in the same criminal transaction as aggravating circumstances. The jury convicted the defendant of all three counts of capital murder, but the San Antonio Court of Appeals concluded that double jeopardy prohibited the defendant from being convicted of multiple counts of capital murder involving the same three victims. *Id.* at 271. The court of appeals therefore vacated two of the defendant's convictions and allowed only one to stand.

On the State's petition for discretionary review, the Texas Court of Criminal Appeals agreed with the appellate court, holding that the capital murder statute, TEx.PENAL CoDE ANN. § 19.03(a)(7)(A), allowed only a single conviction under these circumstances. The Court explained that the Penal Code provides that a defendant may commit capital murder in several different ways, including situations in which the defendant commits a predicate murder, with the commission of one or more additional murders in a single transaction as an aggravating circumstance. The Court pointed out that when the State is prosecuting a defendant for capital murder on this basis, its prosecution necessarily rests on the theory that the defendant killed "more than one person" in a single transaction. making this the "allowable unit of prosecution[.]" *Saenz.* 166 S.W.3d at 273-74.

7

The Court explained that in a non-capital murder case, the murder itself is the "allowable unit of prosecution." ancfi a defendant may therefore be convicted of more than one count of murder when charged individually with the deaths of multiple victims. However. in capital murder cases in which the multiple murder itself is considered to be the "allowable unit of prosecution." the defendant may not be charged or convicted of three separate counts of capital murder utilizing the same three victims for each count, and may instead only be charged and convicted of a single count of capital murder. The Court therefore upheld the court of appeals' decision to vacate two of the defendant's conviction and to allow only one conviction to stand. *!d.* at 274.

Appellant acknowledges that unlike the defendant in *Saenz,* he was not convicted of multiple counts of capital murder; however, he believes that simply being charged in an indictment that allowed for the possibility of multiple convictions violated his right to be free from double jeopardy. Appellant points out that in its holding in *Saenz,* the Court of Criminal Appeals expressly stated that the defendant's double jeopardy rights had been violated when he was "charged" with three separate counts of capital murder. *!d.* Appellant believes this is the "operative" language in the opinion, and that the Court intended to hold that the double jeopardy violation occurred at the time the defendant was charged with multiple counts of capital murder, rather than at the time he was convicted. Appellant reasons that his double jeopardy rights were also violated at the time that he was charged with what he describes as a "facially unconstitutional[]" indictment, improperly accusing him of committing three separate acts of capital murder. Appellant asserts that this allegedly fundamental error in the indictment somehow "tainted" the entire proceedings, and requires us to reverse the trial court's judgment and order a new trial. Appellant's argument fails for several reasons.

8

First, unlike the defendant in *Saenz,* Appellant was not charged in a three-count indictment, and was instead charged with only a single count of capital murder. As explained in more detail below, the three paragraphs contained in the indictment alleged the alternative means by which the one count of capital murder was committed. Further, the trial court expressly instructed the jury that it could only convict Appellant of one count of capital murder as set forth in the indictment, and the jury form given to the jury allowed for only one conviction of capital murder. In contrast to *Saenz* in which the defendant was charged and convicted of three separate offenses, there was no possibility that Appellant could have been convicted of more than one count of capital murder, and in fact he was not.

Second, we note that even though the Court in *Saenz* stated that the defendant's double jeopardy rights had been violated when he was "charged" with three separate counts of capital murder, the Court nevertheless made it clear that the double jeopardy violation did not actually occur until the defendapt was *convicted* of three separate charges. As the Court in *Saenz* noted, the Fifth Amendment's "Double Jeopardy Clause protects against multiple *punishments* for the same offense." *Saenz.* 166 S.W.3d at 272 (emphasis added). It is only violated when a defendant "is *convicted* of more offenses than the legislature intended." *Id.* (emphasis added) (quoting *Ex parte Ervin,* 991 S.W.2d 804, 807 (Tex.Crim.App. 1999)); *see also Ex parte Milner,* 394 S.W.3d 502, 506 {Tex.Crim.App. 2013) ("The Double Jeopardy Clause protects criminal defendants from … multiple punishments for the same offense.").

Further, we find it significant that the Court in *Saenz* did not find it necessary to remand the defendant's case for a new trial, despite its conclusion that the defendant had been improperly charged and convicted of three separate counts of capital murder. Instead, the Court believed that

any such error could be remedied by vacating two of the capital murder convictions, and allowing only one conviction to stand. *Saenz,* 166 S.W.3d at 274. Therefore, even ifthe Court in *Saenz* believed that a constitutional violation had existed at the *charging* stage of the proceedings, it clearly believed that any such violation did not completely taint the proceedings, and that the violation could be remedied by ensuring that only one conviction stood in the defendant's case.

In the present case, Appellant suffered only one conviction for capital murder, and we therefore reject Appellant's argument that his double jeopardy rights were violated.

*The Jury Returned a Unanimous Verdict*

In a somewhat related argument, Appellant contends in his second issue that the trial court's failure to quash the indictment violated his right to a unanimous verdict. Appellant correctly points out that a jury in a criminal case must reach a unanimous verdict. *See* TEX.CODE CRIM.PROC.ANN. art. 36.29(a) (West Supp. 2014) (not less than twelve jurors can render and return a verdict in a felony case). Most recently, the Court of Criminal Appeals addressed this issue in *Saenz v. State.* 451 S.W.3d 388 (Tex.Crim.App. 2014), when it stated: "Texas law requires a unanimous jury verdict in all criminal cases. More specifically, 'the jury must be unanimous in finding every constituent element of the charged offense in all criminal cases.'" *!d.* at 390 (quoting *Jourdan v. State,* 428 S.W.3d 86, 94 (Tex.Crim.App. 2014)).

Appellant argues that the indictment improperly raised the possibility that a jury could have reached a non-unanimous verdict, as some jurors could have based a guilty verdict on a finding that he had killed Sheryl Bennett and Jose Reyes in a single transaction: while others could have based their verdict on a finding that he had killed Sheryl Bennett and Tana Todd in a single transaction; while yet others could have based their verdict on a finding that he had killed Tana

10

Todd and Jose Reyes in a single transaction. Appellant contends that because of the possibility of a non-unanimous verdict, the State should not have been permitted to proceed on the alternative theories set forth in the indictment, and should have instead been required to elect only one theory of prosecution to submit to the jury.

We initially note that the State is permitted to charge a defendant with a single offense, and to use multiple paragraphs to assert alternative means of committing the crime alleged. In *Martinez v. State,* 225 S.W.3d 550, 554 (Tex.Crim.App. 2007), the Court of Criminal Appeals explained that when the State elects to charge multiple offenses in a single indictment, it is required by statute to set out each separate offense in a separate "count." However, the State may include separate "paragraphs" within a single count, alleging different methods of committing the same offense, in accordance with TEX.CODE CRIM.PROC.ANN. art. 21.24(b).' *Id.: see also Landrian v. State.* 268 S.W.3d 532, 535 (Tex.Crim.App. 2008) (State is permitted to plead alternative '·manner and means" of committing the same offense).

In capital murder cases in particular, the State is permitted to charge a defendant with committing capital murder by alternative means in a single-count indictment. *See Gamboa v. State.* 296 S.W.3d 574, 582-84 (Tex.Crim.App. 2009) (State properly charged defendant with one count of capital murder in a two-paragraph indictment, alleging that the defendant caused the death of the same victim while robbing him, or alternatively, while murdering another victim during the same criminal transaction); *Kitchens v. State,* 823 S.W.2d 256, 258 (Tex.Crim.App. 1991) (alternative pleading of differing methods of committing capital murder may be charged in one indictment). In fact, in light of the Court of Criminal Appeals' opinion in the 2005 *Saenz* case, it

---

[3] TEX.CODE CRIM.PROC.ANN. art. 21.24(b) (West 2009) provides that: "A count may contain as many separate paragraphs charging the same offense as necessary, but no paragraph may charge more than one offense."

11

appears that the State had little choice but to allege capital murder in a one-count indictment based on its theory that Appellant had intentionally killed three victims in a single criminal transaction. *Saenz,* 166 S.W.3d at 273-74 (State must avoid charging a defendant with multiple counts of capital murder involving the same victims to ensure that the defendant's double jeopardy rights are not violated by the pos ibility of multiple convictions). If the State had charged Appellant with separate capital murder counts, naming the same victims in each count, it would have subjected Appellant to a possible double jeopardy violation- the very thing that concerned Appellant in his first point of error. We therefore conclude that the State properly charged Appellant in a single-count indictment, utilizing multiple paragraphs for each alternative theory in support of its prosecution.

Further, we note that when a defendant is charged with capital murder involving multiple victims killed in a single criminal transaction, a defendant's right to a unanimous verdict is only violated if the record reflects a possibility that the jury did not agree on which victims were killed in the transaction. The 2014 *Saenz* case is illustrative of this point. In that case, the defendant had been indicted, amoJilg other things, on one count of capital murder, based on the allegation that she had intentionally killed five different victims pursuant to the same scheme or course of conduct in violation of TEX.PENAL CODE ANN. § 19.03(a)(7)(B). [4] *Saenz,* 451 S.W.3d 388. In the indictment, the State had simply listed the names of each individual victim, and the jury charge instructed the jurors to determine if the defendant had caused the death of "more than one" of the five named individuals during the same scheme or course of conduct.

The Court held that the jury charge was defective, as it did not specify the "killing of any

---

[4] TEX.PENAL CODE ANN. § 19.03(a) provides that a person commits capital murder if "**(7)** the person murders more than one person: . . . (B) during different criminal transactions but the murders are committed pursuant to the same scheme or course of conduct[.]"

12

one victim as the predicate murder, and the jury was not required to specifY which two or more of the five alleged victims that they agreed the appellant had murdered." *Jd.* at 391. In particular, the Court noted that the language used in the jury charge "made it possible for the jurors to convict without agreeing that any one particular person was murdered by the appellant," and there was no requirement that the jurors had to agree on which of the various victims were killed; thus, as the Court pointed out, some jurors could have agreed that the defendant "killed victims A, B, and C, while the other six agreed she killed victims D and E." The Court therefore concluded that defendant's right to a unanimous verdict had been violated. *Jd.* at 391-92; *see also Ngo v. State,* 175 S.W.3d 738, 749 (Tex.Crim.App. 2005) (trial court erred in failing to instruct jury that it must be unanimous in deciding which one of the three disjunctively submitted offenses it found appellant committed).

In contrast, in the present case the indictment alleged three separate, alternative paragraphs naming two of the victims in each paragraph. The jury charge made it abundantly clear that the jury was required to consider each of the three paragraphs set forth in the indictment separately, and to unanimously select only one of those paragraphs as a basis for its verdict.[5] Read in

---

[5] In particular, the jury was instructed to initially consider the first paragraph of the indictment, and to determine whether it found beyond a reasonable doubt that Appellant had intentionally caused the deaths of both Sheryl Bennett and Jose Reyes during the same criminal transaction. The charge then instructed the jury that if it found the allegations set forth in the first paragraph to be true beyond a reasonable doubt, it was required to fmd Appellant guilty of the offense of capital murder. At that point, the jury's task would be complete. However, the charge went on to instruct the jury that if it did not find the allegations in paragraph one to be true beyond a reasonable doubt, then it would be required to consider the allegations set forth in the second paragraph, and determine whether it found beyond a reasonable doubt that Appellant had intentionally caused the deaths of both Sheryl Bennett and Tana Todd in the same criminal transaction. If the jury answered in the affirmative, it was instructed to find Appellant guilty of capital murder, and once again, the jury's task would be complete. If, however, the jury did not fmd the allegations in paragraph two to be true beyond a reasonable doubt, it was then instructed to consider the third paragraph in the indictment, and determine whether Appellant had intentionally caused the deaths ofboth Tana Todd and Jose Reyes in the same criminal transaction. Once again, if the jury answered in the affirmative, it was instructed to convict Appellant of capital murder, and if not, it was to instructed to consider the Jesser included offenses of murder with regard to each of the three victims.

conjunction with the trial court's instruction to the jury that its verdict had to be unanimous, the jury was clearly instructed that it was required to unanimously agree on one theory of prosecution, and to expressly decide which victims it believed were intentionally killed by Appellant, before it could find Appellant guilty of capital murder.

Further, the Verdict Form also made it clear to the jury that it was required to select and agree upon only one of the State's three theories of prosecution in reaching its verdict. In particular, the Verdict Form gave the jury three alternatives for finding Appellant guilty of capital murder:

> We, the Jury, find the Defendant, Dalton James Bennett, Jr., guilty of the offense of capital murder, as charged in the first paragraph of the indictment.
>
> OR
>
> We, the Jury, find the Defendant, Dalton James Bennett, Jr., guilty of the offense of capital murder, as charged in the second paragraph ofthe indictment.
>
> OR
>
> We, the Jury, find the Defendant, Dalton James Bennett, Jr., guilty of the offense of capital murder, as charged in the third paragraph of the indictment.

The presiding juror signed his name under the second option for finding Appellant guilty of capital murder as charged in the second paragraph of the indictment *(i.e.,* the killings of Sheryl Bennett and Tana Todd). Further, after the jury's verdict was read in court, specifically stating that the jury had found Appellant guilty of capital murder as alleged in the second paragraph of the indictment, the jury was polled, and all of the jurors affirmed that this was their unanimous decision. As such, it is clear that the jury did in fact reach a unanimous verdict finding that Appellant was guilty of capital murder in Sheryl Bennett's death, based on the aggravating circumstance that Appellant also intentionally killed Tana Todd in this same criminal transaction.

14

*The Jury Charge did not Allmr the Jury to Acquit Appellant and then Reconsider its Decision*

Also in his second issue, Appellant makes one last argument criticizing the jury charge, asserting that the jury charge allowed the jury to '"acquit" Appellant of murdering Sheryl Bennett when it found there was reasonable doubt as to the allegations in the first paragraph in the indictment *(i.e.,* that Appellant had intentionally killed Sheryl Bennett and Jose Reyes in the same transaction), and then improperly allowed the jury to '·reconsider" its '"acquittal" in Sheryl Bennett's death, when the jury was asked to consider the allegations set forth in the second paragraph ofthe indictment *(i.e.,* that Appellant had intentionally killed Sheryl Bennett and Tana Todd in the same transaction). Appellant asserts that the jury charge allowed not only for "double jeopardy problems. but also the possibility of a conviction on less than a unanimous verdict." We disagree.

As explained above, each of the three paragraphs in the indictment properly alleged an alternative theory of prosecution for capital murder, and each paragraph in effect charged a separate "allowable unit of prosecution" for capital murder, *i.e.,* the killing of more than one individual in a single criminal transaction. *See Saenz.* 451 S.W.3d 388: *Ex parte Milner,* 394 S.W.3d at 507. Thus. with respect to the first paragraph in the indictment, the jury was not asked to determine if Appellant had intentionally killed Sheryl Bennett, without any aggravating circumstances, as it would have done in a simple murder case; instead, the jury was asked if Appellant had intentionally killed *both* Sheryl Bennett and Jose Reyes in a single criminal transaction, in support of the State's first theory of prosecution in its capital murder case.

When the jury declined to enter a verdict based on that particular theory of prosecution, it did not acquit Appellant of Sheryl Bennett's murder; instead, it simply determined that there was

15

insufficient evidence to find that Appellant had intentionally killed *both* Sheryl and Jose in a single criminal transaction, and therefore insufficient evidence to support a capital murder conviction on the State's first theory of prosecution. The jury was then instructed to proceed to the State's next theory of prosecution, as set forth in paragraph two of the indictment, and determine whether it believed beyond a reasonable doubt that Appellant had intentionally caused the deaths of *both* Sheryl Bennett and Tana Todd in a single criminal transaction.

As the State's alternative theories of prosecution related solely to the capital murder charge that Appellant had murdered multiple victims in a single transaction, the jury's rejection of one of those theories did not amount to an implied or express acquittal of Appellant on the lesser included charge of simple murder as to each individual victim. We therefore find no defect in the jury's charge, and we reject Appellant's argument on this point.

### Appellant's Right to Confront Witnesses

In his third issue, Appellant contends the trial court violated his Sixth Amendment right to confront witnesses by allowing the county's medical examiner, Dr. Lloyd White, to provide his opinion on the cause of Jose Reyes' death based on his review of an autopsy report that was prepared by a now-retired medical examiner, Dr. Gary Sisler, who was not present in court to testify. The jury, however, did not find that Appellant had intentionally killed Jose Reyes, and instead based its verdict solely on the deaths of Sheryl Bennett and Tana Todd. Further, we have concluded there was no error in the jury's verdict in this regard. Consequently, Appellant's third issue is irrelevant and moot. We overrule all of Appellant's issues.

### Reformation of Error in the Judgment

In its brief, the State points out that the trial court's written judgment mistakenly recorded

16

that the jury assessed the punishment in Appellant's case. The reporter's record. however. reveals that the trial court actually imposed the life sentence on Appellant, recognizing that capital murder carries an automatic life sentence in cases in which the death penalty has been waived. *See* TEX.PENAL CODE ANN. § 12.31(a)(2) (West 2011).

The Texas Court of Criminal Appeals has held that when there is a variation between the oral pronouncement of sentence and the written memorialization of the sentence, the oral pronouncement controls. *Coffey v. State.* 979 S.W.2d 326, 328 (Tex.Crim.App. 1998). In such cases, an appellate court is authorized to reform or modify the judgment to conform to the record of the proceedings and to render an appropriate judgment, in accordance with its authority under TEx.R.APP.P. 43.2. *See French v. State.* 830 S.W.2d 607, 609 (Tex.Crim.App. 1992) (appellate court has authority to reform a judgment to include an affirmative finding to make the record speak the truth when the matter has been called to its attention by any source); *Bigley v. State.* 865 S.W.2d 26, 27-28 (Tex.Crim.App. 1993) (appellate court has the power to modify incorrect judgments when the necessary data and information are available to do so).

We therefore believe it is appropriate to modify the trial court's judgment to reflect that the trial court, and not the jury, assessed the sentence in this case, in accordance with the trial court's oral pronouncement at trial.

**CONCLUSION**

The trial court's judgment is affirmed as modified to reflect that the trial court assessed the punishment in Appellant's case.

STEVEN L. HUGHES, Justice

June 30, 2015

17
